# In the United States Court of Appeals
# For the Fifth Circuit

AMAZON.COM SERVICES LLC,
*Plaintiff-Appellant*,

v.

NATIONAL LABOR RELATIONS BOARD, A FEDERAL ADMINISTRATIVE AGENCY, JENNIFER ABRUZZO, IN HER OFFICIAL CAPACITY AS THE GENERAL COUNSEL OF THE NATIONAL LABOR RELATIONS BOARD, LAUREN MCFERRAN, IN HER OFFICIAL CAPACITY AS THE CHAIRMAN OF THE NATIONAL LABOR RELATIONS BOARD; MARVIN E. KAPLAN, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD; GWYNNE A. WILCOX, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD; DAVID M. PROUTY, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD; MERRICK GARLAND,
*Defendants-Appellees*, and

TEAMSTERS AMAZON NATIONAL NEGOTIATING COMMITTEE,
*Intervenor*.

---

On Appeal from the United States District Court for the
Western District of Texas (5:24-cv-01000)

---

## APPELLANT'S OPENING BRIEF

---

Amber M. Rogers
HUNTON ANDREWS KURTH LLP
arogers@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-979-3000

Kurt G. Larkin
HUNTON ANDREWS KURTH LLP
klarkin@huntonak.com
Riverfront Plaza, East Tower
951 East Byrd Street, Suite 700
Richmond, VA 23219
Telephone: 804-788-8200

October 10, 2024

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

*Case No. 24-50761, Amazon.com Services LLC v. National Labor Relations Board, et. al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1.      Amazon.com Services LLC ("Amazon"), the Plaintiff and Appellant. The sole member of Amazon.com Services LLC is Amazon.com Sales, Inc. The sole owner of Amazon.com Sales, Inc. is Amazon.com, Inc., which does not have a parent company, and no publicly held corporation owns 10% or more of Amazon.com, Inc.'s stock.

2.      National Labor Relations Board, a federal administrative agency, Defendant and Appellee.

3.      Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Appellee.

4.      Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Appellee.

5.      Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Appellee.

6.     Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Appellee.

7.     David M. Prouty, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Appellee.

8.     United States of America, appropriates funds for and assumes debts of Defendants and Appellees.

9.     Hon. Xavier Rodriguez, United States District Judge of the United States District Court for the Western District of Texas, San Antonio Division, who is presiding over the case below.

10.     Teamsters Amazon National Negotiating Committee, Intervenor in the case below.[1]

The undersigned counsel for Amazon lists the following persons as attorneys of record:

11.     Amber M. Rogers, Attorney for Amazon.

12.     Kurt G. Larkin, Attorney for Amazon.

13.     Tyler James Wiese, Attorney for Defendants/Appellees.

14.     Christine Flack, Attorney for Defendants/Appellees.

15.     Michael Samuel Dale, Attorney for Defendants/Appellees.

---

[1] For the purpose of this Certificate, Amazon represents that TANNC may have an interest in this matter on the basis of its intervention below, without waiving any of its objections thereto.

16.     David K. Watsky, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

17.     David O'Brien Suetholz, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

18.     Edward M. Gleason, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

19.     Hector De Haro, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

20.     Jeanne Mirer, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

21.     Julie Gutman Dickinson, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

22.     Mathew Sollet, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

23.     Pamela M. Newport, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

24.     Richard Griffin, Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

25.     William Burden, Jr., Attorney for Intervenor Teamsters Amazon National Negotiating Committee.

s/Amber M. Rogers
Amber M. Rogers

*Attorney of record for Amazon.com Services LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Given the importance of the issues raised in this appeal, Amazon agrees that the matter should be set for oral argument, and appreciates the Court setting this matter for oral argument on November 8, 2024.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... II

STATEMENT REGARDING ORAL ARGUMENT ........................................... VI

TABLE OF CONTENTS ......................................................................................... VII

TABLE OF AUTHORITIES ................................................................................. IX

INTRODUCTION ..................................................................................................... 1

STATEMENT OF JURISDICTION ...................................................................... 3

STATEMENT OF THE ISSUE ............................................................................. 4

STATEMENT OF THE CASE ............................................................................. 4

I.  Amazon's Operations And The Underlying Administrative Proceedings. ..... 4

   A.  The R-Case ................................................................................................ 5

   B.  The C-Case ................................................................................................ 8

II.  Amazon Files Suit In District Court To Enjoin Unconstitutional
Administrative Proceedings. ................................................................................ 10

SUMMARY OF ARGUMENT ............................................................................. 12

STANDARD OF REVIEW .................................................................................. 14

ARGUMENT ......................................................................................................... 14

I.  Amazon Is Entitled To A Preliminary Injunction ......................................... 14

   A.  Amazon Is Likely To Succeed On The Merits Of Its Claims .................... 15

      1.  NLRB Board Members Are Unconstitutionally Insulated From
      Removal. ....................................................................................................... 15

      2.  The NLRB's Adjudication Of Private Rights And Legal Relief Violates
      The Seventh Amendment. ............................................................................. 22

         a.  Amazon is Likely to Succeed on the Merits. ...................................... 22

         b.  The Court has Subject Matter Jurisdiction to hear the Seventh
         Amendment Challenge. ............................................................................. 26

      3.  NLRB Board Members' Wielding Of Executive, Judicial, And
      Legislative Functions Violates The Separation Of Powers The Constitution
      Requires. ....................................................................................................... 28

         a.  NLRB Members Cannot Judge Election Objections and ULP
         Allegations Related to their Own Improper Conduct. ............................. 28

      b.   The Court Has Subject Matter Jurisdiction to Hear the Separation of Powers Claim. ...............................................................................32

   B.  Amazon Will Suffer Irreparable Harm Absent A Preliminary Injunction.33

     1.   Amazon Is Suffering Irreparable Harm—Three Times over—in the Form of Ongoing Subjection to Unconstitutional NLRB Proceedings.........34

     2.   The NLRB's Irreparable Harm Arguments Lack Merit. ........................36

   C.  The Balance Of Equities And Public Interest Weighs In Amazon's Favor, And An Injunction Is In The Public's Interest..................................................39

  II.  The District Court Effectively Denied Amazon's Request For A Preliminary Injunction. ....................................................................................................... 40

CONCLUSION .........................................................................................................44

CERTIFICATE OF COMPLIANCE .......................................................................46

CERTIFICATE OF SERVICE ................................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
   2023 WL 4703307 (D.C. Cir. July 5, 2023) (Walker, J.,
   concurring) ............................................................................................38

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
   309 U.S. 261 (1940) ...............................................................................25

*Axon Enter. Inc. v. FTC*,
   452 F. Supp. 3d 882 (D. Ariz. 2020) ....................................................37

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023).........................................................................*passim*

*Braidwood Mgmt., Inc. v. EEOC*,
   70 F.4th 914 (5th Cir. 2023) ..................................................................33

*BST Holdings, L.L.C. v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) ...................................................14, 34, 39

*Burgess v. FDIC*,
   639 F. Supp. 3d 732 (N.D. Tex. 2022) .................................................35

*Caperton v. A.T. Massey Coal Co.*,
   556 U.S. 868 (2009)...............................................................................30

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
   98 F.4th 220 (5th Cir. 2024) ...........................................................14, 44

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
   526 U.S. 687 (1999)...............................................................................24

*Clarke v. Commodity Futures Trading Comm'n*,
   74 F.4th 627 (5th Cir. 2023) ....................................................................4

*Cochran v. SEC*,
   20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd by Axon*, 598 U.S. 175 ....35, 37, 38

ix

*Cochran v. SEC*,
No. 4:19-CV-066-A, 2019 WL 1359252 (N.D. Tex. Mar. 25, 2019) ...............37

*Collins v. Mnuchin*,
896 F.3d 640 (5th Cir. 2018), *as reinstated by* 938 F.3d 553 (5th
Cir. 2019) (en banc), *aff'd in part, vacated in part, rev'd in part
sub nom. Collins v. Yellen*, 141 S.Ct. 1761 (2021).............................................19

*Collins v. Yellen*,
594 U.S. 220 (2021).........................................................................16, 36, 37

*Community Financial Services Association of America v. CFPB*,
51 F.4th 616 (5th Cir. 2022) .........................................................36, 37

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
91 F.4th 342 (5th. Cir. 2024) ....................................................18, 19, 21

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
98 F.4th 646 (5th Cir. 2024) (Oldham, J., dissenting from denial of
rehearing en banc)...............................................................................21

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ...................................................................40

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. 1981) .............................................................34, 41

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ...................................................................14

*Dennis Melancon, Inc. v. City of New Orleans*,
703 F.3d 262 (5th Cir. 2012) ...................................................................34

*Dimick v. Scheidt*,
293 U.S. 474 (1935).................................................................................27

*Elrod v. Burns*,
427 U.S. 347 (1976).................................................................................34

*Energy Transfer, LP v. NLRB*,
No. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024).....................38

*Exela Enter. Sols., Inc. v. NLRB*,
  32 F.4th 436 (5th Cir. 2022) ...............................................21

*Flamingo Hilton-Laughlin v. NLRB*,
  148 F.3d 1166 (D.C. Cir. 1998).........................................31

*In re Fort Worth Chamber of Com.*,
  100 F.4th 528 (5th Cir. 2024) ....................................*passim*

*Frankl v. HTH Corp.*,
  650 F.3d 1334 (9th Cir. 2011) ...........................................28

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010)...................................................*passim*

*Granfinanciera, S.A. v. Nordberry*,
  492 U.S. 33 (1989)...........................................................22

*Horne v. Polk*,
  394 P.3d 651 (Ariz. 2017) ................................................32

*Humphrey's Ex'r v. United States*,
  295 U.S. 602 (1935)....................................16, 19, 20, 21

*Jarkesy v. SEC*,
  34 F.4th at 446, 456-57 ....................................................24

*Kessel Food Markets, Inc. v. NLRB*,
  868 F.2d 881 (6th Cir. 1989) ...........................................32

*King v. Amazon.com Servs. LLC*,
  No. 22-CV-01479, 2022 WL 17083273 (E.D.N.Y. Nov. 18, 2022),
  *vacated in part sub nom.*, *Poor v. Amazon.com Servs. LLC*, 104
  F.4th 433 (2d Cir. 2024) ....................................................5

*Leacho, Inc. v. CPSC*,
  103 F.4th 748 (10th Cir. 2024), *petition for cert. filed*, No. 24-156
  (Aug. 9, 2024) ...................................................................37

*League of Women Voters of United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016)..............................................39

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ............................................................15

*Lujan v. U.S. Dep't of Educ.*,
   664 F. Supp. 3d 701 (W.D. Tex. 2023) ...........................................39

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993).........................................................................22

*Myers v. United States*,
   272 U.S. 52 (1926)......................................................................15, 16

*NAACP v. Tindell*,
   90 F.4th 419 (5th Cir. 2024), *withdrawn and superseded on other*
   *grounds*, 95 F.4th 212 (5th Cir. 2024) ............................................42

*National Licorice Co. v. NLRB*,
   309 U.S. 350 (1940).........................................................................25

*Nken v. Holder*,
   556 U.S. 418 (2009).........................................................................39

*NLRB v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937).............................................................................25

*Muffley ex rel. NLRB v. Spartan Mining Co.*,
   570 F.3d 534 (4th Cir. 2009) ..........................................................21

*Noah's Ark Processors, LLC*,
   372 NLRB No. 80 (Apr. 20, 2023).....................................18, 21, 23

*NP Red Rock LLC*,
   373 NLRB No. 67, 2024 WL 3063775 (June 17, 2024) ...................23

*Overstreet v. El Paso Disposal, L.P.*,
   625 F.3d 844 (5th Cir. 2010) ..........................................................18

*SEC v. Jarkesy*,
   144 S. Ct. 2117 (2024)...............................................13, 22, 24, 26

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020).................................................................*passim*

*Shurtleff v. United States*,
189 U.S. 311 (1903)...............................................................15

*Space Expl. Tech. Corp. v. NLRB*,
No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July
23, 2024)..............................................................................38

*Space Expl. Techs., Corp. v. Bell*,
701 F. Supp. 3d 626 (S.D. Tex. 2023)...............................38

*Stern v. Marshall*,
564 U.S. 462 (2011)..............................................................40

*Thryv, Inc.*,
372 NLRB No. 22, 2022 WL 17974951 (Dec. 13, 2022) ...............23

*Thryv, Inc. v. NLRB*,
102 F.4th 727 (5th Cir. 2024) ..................................22, 27

*Trader Joe's*,
373 NLRB No. 73, 2024 WL 3358073 (July 9, 2024) ...............23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................16

*Trencor, Inc. v. NLRB*,
110 F.3d 268 (5th Cir. 1997) ..............................................28

*Virginia Electric & Power Co. v. NLRB*,
319 U.S. 533 (1943)..............................................................25

*Ward v. Village of Monroeville*,
409 U.S. 57 (1972)..........................................................27, 35

*Williams v. Pennsylvania*,
579 U.S. 1 (2016)............................................................30, 36

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..................................................................15

*Withrow v. Larkin*,
421 U.S. 35 (1975)................................................................32

xiii

## Statutes

15 U.S.C. §41 ..................................................................................20

15 U.S.C. §2053(c) ..........................................................................20

28 U.S.C. § 1292(a)(1) ...................................................................3, 4

28 U.S.C. § 1331 ...............................................................................3

29 U.S.C. § 153 ...............................................................................28

29 U.S.C. §153(a) ...........................................................................20

29 U.S.C. §§ 153(b) ........................................................................17

29 U.S.C. § 153(d) ..........................................................................20

29 U.S.C. §156 ................................................................................17

29 U.S.C. § 157 ...............................................................................17

29 U.S.C. §§ 159 .......................................................................17, 20

29 U.S.C. § 160 ....................................................................17, 20, 28

29 U.S.C. § 161 ...............................................................................17

## Other Authorities

88 Fed. Reg. 73,946 (Oct. 27, 2023) (to be codified at 29 C.F.R. § 103.40) ........................................................................................18

Lauren Kaori Gurley, *National Labor Relations Board Demands Amazon Reinstated Fired Work Activist*, VICE NEWS (Mar. 17, 2022), available at https://tinyurl.com/25abry46 (last visited Oct. 10, 2024) ..................................................................................29

Karen Weise, *NLRB sues Amazon over labor practices at Staten Island facility*, N.Y. Times (Mar. 17, 2022) .....................................31

U.S. Const. amend. VII ....................................................................22

U.S. Const. §1, cl. 1 .........................................................................15

**INTRODUCTION**

"One can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts. Our Constitution was adopted to enable the people to govern themselves, through their elected leaders." *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010).

This case arises from Amazon's pursuit of its right to challenge the fairness of a March 2022 union election at one of Amazon's largest North American fulfillment centers. Among other errors, the National Labor Relations Board ("NLRB" or "Board") authorized an improper injunction to be brought against Amazon on the eve of voting and thus disturbed the laboratory conditions required for union elections. The same NLRB Members who authorized the prosecution of that action then sat as judges, certifying the results of the union election and denying review of Amazon's Objections. Now, the Board stands poised to find Amazon guilty of an unfair labor practice ("ULP") for declining to bargain with the union when the Company's certification challenge was still pending. These proceedings violate bedrock principles of separation of powers, deny Amazon due process, and rob employees of the right to vote in a free and fair union election.

What is worse, Board Members occupy their improper dual roles of accuser and decider with impunity. They are insulated from removal from office by the

President via limited for-cause protections in the National Labor Relations Act ("NLRA") that do not pass constitutional muster. Moreover, the NLRB's General Counsel seeks legal relief in her pending ULP complaint against Amazon, which is neither authorized by the NLRA, nor permitted by the Seventh Amendment, absent a jury trial. Thus, Amazon is thrice harmed by having to participate in the underlying NLRB proceedings that it seeks to enjoin through this lawsuit.

Amazon brought this lawsuit and sought a preliminary injunction to halt the NLRB before it became too late to remedy the here-and-now injury of these unconstitutional proceedings. After the district court declined to act on that motion, and with the NLRB poised to enter its final order, Amazon appealed the effective denial of the preliminary injunction to this Court. This Court has administratively stayed both the NLRB's proceedings and the case below while it considers Amazon's motion for an injunction pending appeal and the denial of the requested preliminary injunction.

The Court should grant the injunction pending appeal and reverse the district court's effective denial. All of the elements required to justify Amazon's request for immediate relief are present. *First*, Amazon is likely to succeed on the merits of its constitutional claims that (1) Board Members are unconstitutionally insulated from removal in contravention of Article II of the Constitution, (2) the Board seeks to adjudicate private rights and award legal relief through juryless administrative

proceedings that violate the Seventh Amendment, and (3) the Board's actions against Amazon violate constitutionally mandated separation of powers and Amazon's due process rights. *Second*, Amazon is likely to suffer irreparable harm absent immediate relief, because it will be compelled to undergo unconstitutional proceedings before insufficiently accountable agency officials. *Third*, the balance of equities tips in Amazon's favor because it stands to be stripped of its constitutional rights, while the Board stands to lose nothing. *Fourth*, there is an unquestioned public interest in ensuring that federal administrative proceedings comply with the Constitution.

Because it is likely to succeed on the merits, Amazon respectfully requests this Court grant the injunction pending appeal, reverse the district court's effective denial, and order the entry of a preliminary injunction of the Board's proceedings.

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction under 28 U.S.C. § 1331. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 182, 195-96 (2023) (recognizing that structural constitutional challenges to agency proceedings arise under § 1331).

This Court has jurisdiction over the district court's effective denial of Amazon's motion for a preliminary injunction under 28 U.S.C. § 1292(a)(1). Amazon repeatedly asked the district court to rule on Amazon's preliminary-injunction request on or before September 27, 2024—the date when the Board's ULP case against Amazon would be ripe for decision and summary judgment could

be entered against the Company. The district court's failure to rule on the motion by that date amounted to an "effective denial of a preliminary injunction," which this Court recognizes is "an appealable order." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 532 (5th Cir. 2024); *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 635 (5th Cir. 2023) (finding appellate jurisdiction under 28 U.S.C. § 1292(a)(1) when the district court's actions "while not explicitly denying a preliminary injunction, nonetheless has the practical effect of doing so and might cause irreparable harm absent immediate appeal") (brackets and internal quotations omitted).

## STATEMENT OF THE ISSUE

Whether the National Labor Relations Board's administrative proceedings against Amazon in Case 29-CA-310869 should be preliminarily enjoined pending final adjudication of this action.

## STATEMENT OF THE CASE

### I. Amazon's Operations And The Underlying Administrative Proceedings.

As a major online retailer, Amazon receives, sorts, and ships assorted products from warehouses called Fulfillment Centers. ROA.100 at ¶ 4. This matter arises from a pair of NLRB proceedings relating to a union representation election conducted at a Fulfillment Center in Staten Island, New York, called "JFK8." Under the NLRB's shorthand, these two cases are known as the "R-Case" (Case 29-RC-288020) and

the "C-Case" (Case 29-CA-310869), which focus on, respectively, the union election and Amazon's alleged refusal to bargain with the union. ROA.105 at ¶ 9.

## A.     The R-Case

The R-Case began in December 2021, when the Amazon Labor Union ("ALU") filed a petition seeking to represent a bargaining unit of more than 8,000 JFK8 hourly employees. ROA.105 at ¶ 4. Officials from NLRB Region 29 in Brooklyn supervised an in-person election at JFK8 in March 2022. ROA.105 at ¶¶ 5-6. When the ballots were tallied, fewer than 5,000 of the eligible employees had cast ballots, and the votes for the ALU narrowly edged out those against—2,654 to 2,131. ROA.105 at ¶ 7. One week after the final tally, Amazon filed 25 Objections to the Results of the Election ("Objections"). ROA.105 at ¶ 10. The Objections alleged that both the ALU and NLRB Region 29 acted inappropriately and interfered with the conditions necessary for holding a free and fair election under the NLRA. ROA.105 at ¶ 10.

On the eve of the March 2022 R-Case election, the Region 29 Regional Director, with the approval of the General Counsel,[2] sought an injunction ordering the immediate reinstatement of a former JFK8 employee and the ALU's co-founder, who had been terminated some 23 months earlier. ROA.105-06 at ¶¶ 11-12; *see King*

---

[2] *See* NLRB, OFFICE OF THE GENERAL COUNSEL, SECTION 10(J) MANUAL, USER'S GUIDE, Sec. 5.2 (outlining requirement that the General Counsel review and agree with any request from a Region to pursue 10(j) relief).

*v. Amazon.com Servs. LLC*, No. 22-CV-01479, 2022 WL 17083273, at *1-3 (E.D.N.Y. Nov. 18, 2022), *vacated in part sub nom.*, *Poor v. Amazon.com Servs. LLC*, 104 F.4th 433, 438 (2d Cir. 2024). Amazon terminated that employee in May 2020 for making vulgar and derogatory comments toward another employee. ROA.100 at ¶ 6. The employee filed a charge against Amazon in June 2020, and NLRB Region 29 issued a complaint against Amazon in December 2020. ROA.106 at ¶ 12. Under the Board's internal guidance, the General Counsel should have sought injunctive relief under Section 10(j) as soon as the Board issued its complaint in the underlying case. *See* NLRB, OFFICE OF THE GENERAL COUNSEL, SECTION 10(J) MANUAL, USER'S GUIDE, Sec. 5.1. Indeed, the Board directs Regions not to allow the investigation of ancillary, even potentially related, charges to stall its 10(j) filings as the Board's protracted administrative process runs its course. *Id.* at Sec. 1.1; *see also* NLRB GC Memorandum 22-02 ("As General Counsel, I believe it is incumbent upon the Agency to consider seeking Section 10(j) injunctions immediately after determining that workers have been subject to threats or other coercive conduct during an organizing campaign.").

In Amazon's case, however, the General Counsel waited for more than another year after the complaint, and nearly two years after the termination, and sought an injunction mere days before the union election at JFK8. ROA.105-06 at ¶¶ 11-12. On top of the inordinate (and, as Amazon alleged in its Objections,

intentionally timed) delay, three of the four sitting Board Members voted to authorize the General Counsel's objectionable prosecution of this 10(j) proceeding against Amazon. ROA.106 at ¶ 13; ROA.109 at ¶ 37; ROA.149. Amazon objected that this long-delayed action undermined the integrity of the April 2022 election that the Board was obliged to supervise neutrally. ROA.113-14.

In light of this and Amazon's other Objections involving Region 29's mishandling of the election, the General Counsel transferred the R-Case to Region 28, which serves areas in Nevada, Arizona, New Mexico, and Texas. ROA.106 at ¶ 16. Region 28 held a hearing on Amazon's Objections over 24 business days in the summer of 2022. ROA.106 at ¶¶ 18-19. On September 1, 2022, the Region 28 Hearing Officer recommended that all of Amazon's Objections be overruled. ROA.107 at ¶ 20. Amazon timely filed Exceptions to the Hearing Officer's Report. ROA.107 at ¶ 21.

In January 2023, the Region 28 Regional Director affirmed the Hearing Officer's Report and certified the ALU as bargaining representative of the Company's hourly employees at JFK8. ROA.107 at ¶ 22. Amazon filed a Request for Review with the NLRB challenging the Region 28 Regional Director's Decision. ROA.107 at ¶ 23. The NLRB denied Amazon's Request for Review in the R-Case on August 29, 2024. ROA.107 at ¶ 24.

### B.     The C-Case

On April 2, 2022—the day after the tally of ballots—the ALU demanded that

Amazon recognize and bargain with it. ROA.107 at ¶ 26. Following that demand for

bargaining, the ALU filed a ULP charge (case 29-CA-310869) with Region 29

alleging that Amazon unlawfully refused to recognize or bargain with the Union as

the exclusive bargaining representative of JFK8's hourly employees. ROA.107 at

¶ 27.

In July 2023, while Amazon's Objections in the underlying R-Case remained

pending before the Board, the Regional Director of NLRB Region 29 initiated the

C-Case by issuing a Complaint and alleging that Amazon unlawfully refused to

bargain with the ALU. ROA.108 at ¶ 28. A month later, the General Counsel moved

to transfer the C-Case directly to the NLRB and for Summary Judgment. ROA.108

at ¶ 29. The same day, the NLRB obliged and transferred the C-Case to itself and

issued Amazon a Notice to Show Cause why the General Counsel's summary-

judgment motion should not be granted. ROA.108 at ¶ 30.

In her summary-judgment motion, the General Counsel alleges that the ALU

was validly declared the winner of the JFK8 election and that, by electing to pursue

its Objections in the R-Case and choosing not to bargain with the ALU until those

challenges are adjudicated, Amazon has violated the NLRA. ROA.108 at ¶ 29. She

seeks an order from the NLRB directing Amazon to recognize and bargain with the

ALU as the exclusive representative of the hourly employees at JFK8. ROA.108 at ¶ 29. She also seeks consequential damages of an unspecified amount against Amazon as a "make-whole" remedy for certain Amazon employees. ROA.108 at ¶ 29; ROA.109 at ¶ 35; ROA.138-39 at ¶ 27 (General Counsel requesting that the Board award "a compensatory make-whole remedy . . . and order [Amazon] to make the employees at issue here whole for the lost opportunity to engage in collective bargaining . . ."). Amazon opposed the summary-judgment motion and argued, among other things, that the NLRB could not resolve the case until it ruled on Amazon's Request for Review in the R-Case. ROA.108 at ¶ 31.

By teeing up the C-Case for summary judgment while Amazon's Objections in the R-Case remained pending, the NLRB choreographed a circumstance in which Amazon's good-faith and legal pursuit of its Objections would subject the Company to ULP liability under the NLRA. That tension came to a head when the Board denied Amazon's Request for Review in the R-Case on August 29, 2024. ROA.107 at ¶ 24; ROA.109 at ¶ 33. The next day, the NLRB issued an updated Notice to Show Cause in the C-Case, instructing Amazon to file any supplemental opposition to the original Notice to Show Cause response on or before September 13, 2024. ROA.109 at ¶ 33. The deadline was later extended to September 27, 2024.

## II.	Amazon Files Suit In District Court To Enjoin Unconstitutional Administrative Proceedings.

Facing the imminent ruling in the C-Case, Amazon filed suit on September 5, 2024. ROA.13-34. Amazon alleged that (1) the NLRB's Board Members are unconstitutionally insulated from removal in contravention of Article II of the Constitution, (2) the NLRB seeks to adjudicate private rights without a jury trial in violation of the Seventh Amendment of the Constitution, and (3) the structure of the NLRB violates the constitutionally mandated separation of powers and Amazon's due process rights. ROA.13-34.

Based on the involvement of Region 29, the relief sought for JFK8 employees who had transferred to Texas, and the nationwide remedies the Board may impose, Amazon brought its suit in the Western District of Texas. ROA.13-34. Immediately after filing suit, Amazon asked the Board to administratively stay the C-Case proceeding so that the courts could review its constitutionality. The Board refused. So, on September 10, Amazon moved the district court for a temporary restraining order and preliminary injunction, requesting that the court stay or enjoin the underlying administrative proceedings to prevent Amazon from suffering immediate and irreparable harm. ROA.76-149.

The motion was briefed, and the district court held a hearing on September 24, 2024. ROA.76-149; ROA.185-217; ROA.496-507; ROA.546. At the hearing, Amazon reiterated its need for a ruling on its request for immediate preliminary relief

given the fast-approaching September 27 deadline. ROA.558-59; ROA.586. On September 26, Amazon submitted a letter brief to the district court, again stressing its need for a decision in light of the imminent possibility of an adverse order mooting the court proceedings and entreated the district court to enter a temporary restraining order pending its decision on the preliminary injunction. ROA.508-12. Amazon explained the risk of a ruling in the C-Case and noted that the Company would be forced to seek emergency relief from this Court by September 27. ROA.508-09.

As of Friday, September 27, the district court had not ruled on Amazon's motion, nor had it given any indication of when it might rule. Faced with that effective denial, Amazon noticed its appeal to this Court and asked for an administrative stay and injunction pending appeal. ROA.519-22; Dkt. 11. Later that evening, Amazon filed its supplemental brief with the Board in the C-Case, leaving the Board free to issue its final decision.

On Monday, September 30, the Court granted the administrative stay of the district court and NLRB proceedings and ordered this appeal expedited. Dkt. 46.[3]

---

[3] Two days after Amazon filed its notice of appeal and sought emergency relief from this Court, the district court purported to enter and sua sponte stayed an order transferring the case to the District of Columbia and denying Amazon's request for a temporary restraining order. ROA.528-41. The district court lacked jurisdiction to enter the order, and it has no effect on the appeal before the Court. *See Fort Worth Chamber*, 100 F.4th at 531 (noting that a district court lacked jurisdiction to order the transfer of a case that had been appealed, because "[o]nce a party properly

## SUMMARY OF ARGUMENT

The district court erred by effectively denying Amazon's request for a preliminary injunction against the NLRB to halt its unconstitutional ULP proceeding against the Company. Amazon is likely to succeed on the merits of its constitutional challenges to the NLRB's structure and conduct, which have and will further cause the Company irreparable harm. An injunction against such unconstitutional proceedings is appropriate and in the public interest. This Court should therefore reverse the district court's effective denial and order the entry of the injunction.

*First*, the NLRB's structure violates Article II of the Constitution because the President cannot remove Board Members at-will. Board Members exercise substantial executive power through their oversight of representation elections, declaration of appropriate bargaining units and authorization of prosecutions under the NLRA. The Supreme Court's limited exception to the strictures of Article II for multi-member agency boards does not extend to the NLRB given the unique structure of the Board and substantial executive power wielded by the Board Members and General Counsel.

*Second*, the C-Case proceeding violates the Seventh Amendment of the Constitution because the General Counsel seeks legal relief for private parties

---

appeals something a district court has done . . . the district court has zero jurisdiction to do anything that alters the case's status").

without a jury trial. The Supreme Court's decision in *Jarkesy* prohibits agencies from holding such proceedings. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024). The public-rights exception to the jury trial requirement does not apply where, as here, the agency seeks money damages for a particular set of individuals.

*Third*, the NLRB's adjudication of the C-Case proceeding violates separation of powers principles and Amazon's due process rights. Three sitting NLRB Members voted to authorize prosecution of a 10(j) injunction to reinstate a long-ago terminated JFK8 employee only days before the representation election. Amazon challenged that action in its R-Case Objections as impermissibly interfering with the laboratory conditions necessary for a fair election. Yet, the same NLRB Members who authorized that interference overruled Amazon's election Objections in the R-Case and now stand poised to affirm their own innocence by ordering Amazon to bargain with the ALU in the C-Case. The Constitution prohibits such conflicted decision-making.

Without injunctive relief, Amazon will suffer irreparable harm. Amazon is currently being forced to participate in unconstitutional NLRB proceedings. This unique harm—ongoing "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker"—is a "here-and-now" injury that "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191. Absent entry of a

preliminary injunction, the NLRB proceedings will conclude and judicial review will "come too late to be meaningful" for Amazon. *Id.*

The other factors necessary for a preliminary injunction—the balance of equities and the public interest—favor relief because there is no governmental or public interest in conducting an unconstitutional agency proceeding. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

For all of these reasons, the Court should reverse the district court's effective denial of Amazon's motion for a preliminary injunction and remand the case for entry of an injunction.

## STANDARD OF REVIEW

A denial of a preliminary injunction is reviewed "for abuse of discretion; underlying legal determinations are reviewed *de novo* and factual findings for clear error." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 233 (5th Cir. 2024) (reversing denial of preliminary injunction). "A district court by definition abuses its discretion when it makes an error of law." *Id.* (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022)).

## ARGUMENT

## I.    Amazon Is Entitled To A Preliminary Injunction.

A court may order a preliminary injunction when a movant shows that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of the injunction, (3) the balance of equities tips in its favor, and (4) an

injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). Amazon meets all four factors.

### A.    Amazon Is Likely To Succeed On The Merits Of Its Claims.

#### 1.    NLRB Board Members Are Unconstitutionally Insulated From Removal.

The Constitution vests *all* executive power with the President. *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (citing Art. II, §1, cl. 1). With this power comes the ability to remove executive officers. *Id*. at 203-04. "Since 1789, the Constitution has been understood to empower the President to keep these officers accountable— by removing them from office, if necessary." *Free Enter. Fund*, 561 U.S. at 483. In early cases addressing the President's removal power under Article II, the Court spoke clearly and unambiguously, finding "the power of appointment and removal is clearly provided for by the Constitution, and the legislative power of Congress in respect to both is excluded." *Myers v. United States*, 272 U.S. 52, 126-27 (1926). The Supreme Court's interpretation of Article II, and the concomitant removal power of the President, has been consistent for more than 100 years. *See, e.g.*, *Shurtleff v. United States*, 189 U.S. 311, 317 (1903) (discussing Article II's grant of authority to the President to remove officers for "any. . . reason which he . . . should think sufficient").

In the years following *Myers*, the Supreme Court carved out a narrow exception to the President's power to remove principal officers in *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935). There, the Court determined that Article II did not require unrestricted removal power for the President with respect to members of the Federal Trade Commission, because the FTC did not exercise "executive" duties, but instead played a "quasi-judicial and quasi-legislative" role. *Id.* at 624. *Humphrey's Executor* has come to stand for the proposition that Congress may restrict the President's removal power only for multimember agencies that do not wield "substantial executive power." *See Seila Law*, 591 U.S. at 218. This exception to Article II represents "the outermost constitutional limit[] of permissible congressional restrictions on the President's removal power." *Id.*

Simply put, executive power encompasses the power to execute the laws of the land. It focuses on the power of prosecution and law enforcement, and the idea that "the buck stops with the President." *Free Enterp. Fund*, 561 U.S. at 493. Deciding "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021). So does the power to interpret the law. *Collins v. Yellen*, 594 U.S. 220, 254 (2021) (explaining that interpreting legislation "is the very essence of 'execution' of the law"). As does the power to promulgate regulations effectuating the mission of the agency. *See, e.g.,*

*Seila Law*, 591 U.S. at 218 (noting that CFPB director is "hardly a mere legislative or judicial aid," in part, because she "possesses the authority to promulgate binding rules").

The NLRB regularly exercises these executive powers. For one, Board Members maintain exclusive authority over representation elections under the NLRA, including the determination of appropriate bargaining units, directing elections, and certifying election results. 29 U.S.C. §§ 153(b), 159. Using this exclusive authority, they interpret and enforce the NLRA's touchstone principle that "employees shall have the right to self-organization, to form, join or assist labor organizations . . . and shall also have the right to refrain from any or all of such activities" through their decisions to process or reject election petitions. 29 U.S.C. § 157.

NLRB Members likewise exercise executive authority beyond their exclusive control of representation cases. Board Members may "prevent any person from engaging in any unfair labor practice," including through the power to authorize pursuit of injunctions in federal court. 29 U.S.C. § 160. They have broad authority to "make, amend, and rescind . . . such rules and regulations as may be necessary to carry out" their duties. 29 U.S.C. §156. And they have the power to investigate alleged violations of the statute, issue subpoenas, and compel witness testimony. 29 U.S.C. § 161.

The Board does not hold these executive powers in reserve but instead wields them with regularity. For example, the NLRB recently promulgated rules re-defining when a business is liable under the NLRA for the unfair labor practices of a nominally separate entity under a "joint employer" liability theory. Those rules vastly expand what kinds of business relationships yield unfair labor practice liability under the NLRA. *See* Standard for Determining Joint Employer Status, 88 Fed. Reg. 73,946 (Oct. 27, 2023) (to be codified at 29 C.F.R. § 103.40). NLRB Members also recently emphasized their authority to "effectuate the policies of the Act" by issuing enhanced remedies for violations of the NLRA through case adjudications, even when no party requests them or objects to the administrative law judge's orders. *Noah's Ark Processors, LLC*, 372 NLRB No. 80, *4 (Apr. 20, 2023) (ordering enhanced remedies to "encourage compliance with the Act" and enforce employee rights) (brackets omitted).

Such interpretive and prosecutorial decisions, and the discretion the NLRB maintains to exercise them, are "unquestionably" core executive functions. *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 353 (5th. Cir. 2024); *see also Seila Law*, 591 U.S. at 225 (holding CFPB director's acts of setting enforcement priorities, promulgating rules, initiating prosecutions, and determining penalties demonstrate exercise of executive power); *Overstreet v. El Paso Disposal,*

*L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) (describing the Board's power to authorize 10(j) proceedings as prosecutorial in nature).

Under this Court's precedent, the inquiry then turns to whether the NLRB's structure combines with its executive power to "excessively insulate" it from presidential control. *Collins v. Mnuchin*, 896 F.3d 640, 666-67 (5th Cir. 2018), *as reinstated by* 938 F.3d 553, 587 (5th Cir. 2019) (en banc), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 141 S.Ct. 1761 (2021). The answer is unequivocally "yes."

This Court recently examined the scope of the *Humphrey's Executor* exception in *Consumers' Research*. While it acknowledged "the logic of *Humphrey's* may have been overtaken" and conceded the CPSC exercised "substantial" executive power, the panel majority upheld the agency's for-cause removal protections. *Consumers' Rsch.*, 91 F.4th at 346. But it did so, at least in part, because it determined that the CPSC's unremarkable structure closely mirrored the historic multi-member agency structure upheld in *Humphrey's Executor. Id*. at 354. In contrast, the NLRB, much like the agencies the Supreme Court declined to save from Article II scrutiny in *Seila Law* and *Free Enterprise Fund*, maintains a unique structure.

Although the NLRB consists of a multi-member board with staggered terms, the similarities end there. In contrast to the CPSC and the FTC, Congress placed no

limitation in the NLRA on the number of Members from the President's political party that may sit on the Board at any one time. *Compare* 15 U.S.C. §2053(c) ("Not more than three of the [five] Commissioners shall be affiliated with the same political party.") and 15 U.S.C. §41 ("Not more than three of the Commissioners shall be members of the same political party") *with* 29 U.S.C. §153(a) (creating the NLRB without any requirement of partisan balancing). Congress therefore left open for the President the opportunity to appoint only Members from their own party. Because the five Board Members sit for staggered five-year terms, the President could install (at least) four politically-aligned Members. That structural distinction sets the NLRB apart from the partisan balancing act required for the FTC and CPSC and makes it less independent than those agencies. But given the NLRA's removal protections, a President could find themself saddled with a Board openly hostile to their executive priorities.

Congress further departed from the structure ratified in *Humphrey's Executor* when it created the position of the NLRB General Counsel. 29 U.S.C. § 153(d). In doing so, Congress bifurcated the executive functions performed by the NLRB and the General Counsel, leaving the NLRB in charge of all representation election matters and assigning to the General Counsel the prosecution of unfair labor practice matters. 29 U.S.C. §§ 159, 160. Even so, Congress did not remove all prosecutorial functions related to unfair labor practices from the NLRB, including the authority to

pursue 10(j) injunctions. *Muffley ex rel. NLRB v. Spartan Mining Co.*, 570 F.3d 534, 540 (4th Cir. 2009) (finding "Congress vested the power to seek § 10(j) relief with the Board" and that the ability to seek such relief is "clearly prosecutorial"). The Board has also assumed the authority to impose penalties that the General Counsel did not seek. *Noah's Ark Processors, LLC*, 372 NLRB No. 80, at *4.

In light of the substantial executive power she wields, there is little doubt that the General Counsel enjoys no removal protections. *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 442 (5th Cir. 2022). Because the NLRB Members retain important aspects of that very same executive power, it would be improper to extend *Humphrey's Executor* to protect them.

In sum, the Board is not "a multimember body of experts, balanced along partisan lines, that perform[s] legislative and judicial functions." *See Seila Law*, 591 U.S. at 198 (describing the scope of *Humphrey's Executor*). And it clearly "wield[s] substantial executive power." *Id*. at 218. Therefore, neither *Humphrey's Executor* nor *Consumers' Research* extend to the NLRB, and the removal protections for NLRB Members set forth in the NLRA are unconstitutional.[4]

---

[4] As of this filing, the Supreme Court is considering a petition for certiorari to this Court's decision in *Consumers' Research*. No. 23-1323 (U.S.). To the extent this Court concludes that its decision in *Consumers' Research* applies to the NLRB, Amazon respectfully preserves the argument that *Consumers' Research* was wrongly decided and improperly expanded *Humphrey's Executor* beyond its facts. *See Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 98 F.4th 646, 650-57 (5th Cir. 2024) (Oldham, J., dissenting from denial of rehearing en banc).

**2.** **The NLRB's Adjudication Of Private Rights And Legal Relief Violates The Seventh Amendment.**

**a.** **Amazon is Likely to Succeed on the Merits.**

The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. In assessing whether a common-law claim triggers Seventh Amendment protections, courts assess the nature of the cause of action and the nature of the remedy. *Jarkesy*, 144 S. Ct. at 2129. The nature of the remedy is the "more important" consideration and can be "all but dispositive." *Id.* Cases seeking legal relief "must be tried under the auspices of an Article III Court." *Granfinanciera, S.A. v. Nordberry*, 492 U.S. 33, 53 (1989). "Compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted).

Here, the NLRB charged Amazon with an unfair labor practice for its failure to bargain with the ALU and seeks remedies that include compensatory damages to affected employees for their "lost opportunity" to engage in collective bargaining. The NLRB purports to pursue this "consequential-damages-like" remedy under the auspices of equitable "make-whole" relief. *Thryv, Inc. v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024). But the Board's citation to statutory equitable relief does not solve the constitutional problem. Because the NLRB seeks compensatory damages in its

action against Amazon, it cannot proceed to prosecute its case without an Article III decisionmaker.

Beyond that legal relief, the NLRB Members recently assumed the power to issue *any remedy they deem appropriate* in an unfair labor practice case, even if the General Counsel did not seek them. *See Noah's Ark Processors, LLC*, 372 NLRB No. 80, at *4. These potential remedies include all of the consequential damages remedies the NLRB recently approved in *Thryv*, which the NLRB Members indicated they would seek "in all cases." *Thryv, Inc.*, 372 NLRB No. 22, 2022 WL 17974951, at *9-10 (Dec. 13, 2022). The Board has followed through on those promises and overruled administrative law judge decisions that declined to award compensatory damages. *See, e.g.*, *Trader Joe's*, 373 NLRB No. 73, 2024 WL 3358073, at *1 n.2 (July 9, 2024); *NP Red Rock LLC*, 373 NLRB No. 67, 2024 WL 3063775, at *11 (June 17, 2024). Thus, the C-Case, the underlying ULP proceeding, involves both a direct request by the General Counsel for compensatory damages, and the prospect the NLRB Members could bootstrap those penalties with additional legal remedies of their own.

While these legal remedies are all but dispositive to entitle Amazon to a jury trial, the NLRB's action also resembles a traditional tort or contract cause of action. The Seventh Amendment applies "not only to common-law causes of action but also to statutory causes of action analogous to common-law causes of action." *City of*

*Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708-09 (1999) (internal quotations omitted). Like in *Monterey*, the NLRB here seeks to enforce the representation election decision by compensating employees for violation of legal duties in order to deter future violations. In all relevant respects, this mirrors an action at law subject to the Seventh Amendment. *Id.* at 710. Because the NLRB's action here sounds in traditional legal relief and seeks traditional legal remedies, the underlying action implicates the Seventh Amendment.

In the lower court, the NLRB sought shelter by invoking the "public rights" exception to the Seventh Amendment. But "[t]he public rights exception is, after all, an *exception*" that should not be allowed to "swallow the rule," in matters sounding in common law and implicating private interests. *Jarkesy*, 144 S. Ct. at 2134. Here, the Board seeks traditional compensatory damages remedies to a particular group of persons—relief that cannot fairly qualify as vindicating public rights. As this Court explained in its *Jarkesy* decision, the government's involvement in a suit to enforce a statute designed to protect the public does not alone mean an action vindicates public rights. *Jarkesy v. SEC*, 34 F.4th at 446, 456-57. The Supreme Court agreed, finding "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Jarkesy*, 144 S. Ct. at 2136. Here, the Board alleges that Amazon breached its duty to provide certain unknown (and unknowable) consideration to particular employees through collective bargaining. That effort to

obtain individualized and speculative consequential relief for private individuals departs from a traditional statutory action for reinstatement or back pay under Section 10(c) of the NLRA.

And because the NLRB's expanded compensatory remedies are new, older cases applying the public rights exception to NLRB proceedings matter little. In *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 22 (1937), the NLRB sought equitable relief expressly authorized by statute–reinstatement, backpay, and a notice posting remedy. Likewise in *National Licorice Co. v. NLRB*, 309 U.S. 350, 356 (1940), where the Board issued a bargaining order and demanded the employer repudiate invalid individual agreements it reached with employees. And, in *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 534 (1943), the Board ordered the employer to withdraw recognition from a wrongly recognized union and reimburse employees for wrongly paid dues. These early NLRB cases involved narrowly enumerated statutory relief consistent with its role to prevent unfair labor practices as a public agent, not a provider of private, compensatory remedies. *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265, 269 (1940) (recognizing the NLRB's authority to prevent unfair labor practices through contempt proceedings in court, but noting the NLRB did not seek any "private administrative remedy"). None of those cases involved the type of statutory overreach at issue here, where the NLRB seeks to punish Amazon and deter future

appeals by ordering it to pay a speculative monetary award to employees simply for exercising its various statutory rights to review and appeal.

### b. The Court has Subject Matter Jurisdiction to hear the Seventh Amendment Challenge.

The Court should address Amazon's Seventh Amendment challenge now, not later. *See Axon*, 598 U.S. at 175. Under *Axon*, courts have jurisdiction over challenges to agency proceedings if: (1) failing to consider the claim would foreclose meaningful judicial review; (2) the claim raises issues "wholly collateral to the statute's review provisions"; and (3) the claim is outside the agency's expertise. *Id*. at 186. Amazon satisfies all three factors.

First, the Court can review Amazon's Seventh Amendment challenge now because deprivation of a jury in a matter involving legal relief constitutes a "here-and-now" injury that the Court cannot remedy later. *Id.* at 192. Amazon need not wait for conclusion of an unconstitutional proceeding in front of the Board before it seeks relief for the deprivation of its fundamental right to a jury trial. *Id*. Indeed, "the right to trial by jury is of such importance . . . that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *Jarkesy*, 144 S. Ct. at 2128 (internal quotations omitted). *Axon* permits review of this issue now because Amazon's challenge is not simply whether the Board may order legal damages in an unconstitutional juryless adjudication, but instead what kind of factfinder must sit, regardless of the outcome, to decide the questions that inform the

liability underlying that relief. *See generally Dimick v. Scheidt*, 293 U.S. 474, 486 (1935). Absent this Court's review, Amazon's right to an acceptable adjudicator in the first instance would be "effectively lost." *Axon*, 598 U.S. at 192; *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972) (holding a party is entitled to a constitutionally acceptable adjudicatory process in the first instance).

Second, Amazon's challenge is collateral to the agency's normal proceedings. *Axon*, 598 U.S. at 192. Here, Amazon challenges the Board's power to proceed at all when the General Counsel seeks—or the Board stands poised to impose—legal relief. In the district court, the NLRB mischaracterized Amazon's Seventh Amendment claim as a challenge to "what remedy should flow" from a given violation of the NLRA. But Amazon's claim is more fundamental than that – the General Counsel has already indicated her intent to seek legal relief through consequential damages for failure to bargain. In light of that expressed intent, the question is whether the Seventh Amendment allows the Board to *proceed* with its case absent a jury, not merely whether it authorizes the Board to order such relief.

Finally, the NLRB's attempt to expand its traditional process to seek new, consequential legal relief falls outside the limited powers courts have allowed it to exercise under Section 10(c). *See generally Thryv, Inc.*, 102 F.4th at 737 (noting with disapproval the NLRB General Counsel's pursuit of "a novel, consequential-damages-like labor law remedy"). The General Counsel lacks expertise with respect

to the compensatory remedies she seeks in the Complaint, and the Board lacks both the authority and experience in deciding how to award them. Moreover, the NLRB has no expert knowledge with respect to the application of the Seventh Amendment in proceedings involving these newly conceived remedies. *Axon*, 598 U.S. at 194. As such, the claim at issue here—that the Board's new remedies exceed Seventh Amendment limits—cannot fall within the agency's expertise.

> **3.** **NLRB Board Members' Wielding Of Executive, Judicial, And Legislative Functions Violates The Separation Of Powers The Constitution Requires.**
>
> **a.** **NLRB Members Cannot Judge Election Objections and ULP Allegations Related to their Own Improper Conduct.**

The NLRA grants NLRB Members final say over representation election proceedings. 29 U.S.C. § 153. In practice, that means NLRB Members have final say over election objections, which parties to an NLRB representation election may file if they believe the "laboratory conditions" for a fair election were tainted. *See Trencor, Inc. v. NLRB*, 110 F.3d 268, 269 (5th Cir. 1997). The NLRA also grants NLRB Members exclusive authority to authorize injunction proceedings in federal court, which often seek to force employers to return employees to work during the pendency of unfair labor practice litigation. 29 U.S.C. § 160; *see Frankl v. HTH Corp.*, 650 F.3d 1334, 1340 (9th Cir. 2011). But when a party alleges that the NLRB Members' exercise of prosecutorial authority under Section 10(j) interferes with

laboratory conditions necessary for a fair election, those NLRB Members cannot sit in final judgment of election Objections related to their own misuse of prosecutorial powers.

But that's precisely what happened here. The NLRB authorized the General Counsel to seek 10(j) injunctive relief to obtain reinstatement of a JFK8 employee only days before the JFK8 representation election. Amazon subsequently learned through a FOIA request that NLRB Members McFerran, Prouty and Wilcox authorized the 10(j) action. The circumstances of the 10(j) proceeding were highly unusual. Even though the NLRB normally uses 10(j) relief early on in an unfair labor practice proceeding, here it waited almost two years before seeking this particular injunction. Unsurprisingly, the NLRB's 10(j) action received significant publicity, and supporters of the ALU seized on it in their campaign communications, using it to show employees the purported power of union representation.[5] The ALU went on to receive a narrow majority of votes cast in the election. When Amazon filed its election Objections to the fairness of the vote, it based its first and centerpiece Objection on the NLRB's decision to pursue the 10(j) injunction *when it did*.

---

[5] NLRB Region 29's Regional Director removed any doubt that the NLRB understood the significance of *when* it authorized the 10(j) proceeding, telling the press "it is important for workers to know their rights—*particularly during a union election*—and that the NLRB will vociferously defend them." Lauren Kaori Gurley, *National Labor Relations Board Demands Amazon Reinstated Fired Work Activist*, VICE NEWS (Mar. 17, 2022), available at https://tinyurl.com/25abry46 (last visited Oct. 10, 2024).

Consistent with normal NLRB election procedures, a Hearing Officer for the NLRB served as the first judge of Amazon's election Objections. She overruled them. Amazon excepted to her decision, which eventually placed the Objections before the NLRB for final decision, including on the Objections related to the initiation of the 10(j) proceeding. The NLRB delegated its authority over the exceptions case to a three-member panel that included Members McFerran and Prouty, who joined together in a 2-1 vote to certify the election results. Now, barring injunctive relief, the same three members who voted to authorize the objectionable 10(j) proceeding will sit in judgment of the pending C-Case proceeding, and be permitted to find that Amazon violated the NLRA for refusing to bargain, order Amazon to bargain with the union, and impose monetary damages.

"The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision." *Williams v. Pennsylvania*, 579 U.S. 1, 9 (2016). Yet that is precisely what the NLRB Members stand to do here. *Cf. Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009) (instructing courts assessing due-process violations to examine "whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias'").

Here, the potential for bias among the NLRB Members who authorized the 10(j) proceeding is obvious. They authorized a high-profile prosecution against Amazon at the very facility subject to a pending union election only a week before voting began. Everyone involved recognized the significance of the decision at the time and its potential to influence voters.[6] No reasonable person could conclude that these same NLRB Members could then act as unbiased neutrals when deciding whether to overturn the results of the election based on their own prosecutorial decision. The unconstitutional potential for bias is clear.

Previous cases finding that the NLRB could authorize 10(j) injunctions and then decide the merits of the unfair labor practice allegations in *the same case* do not support the NLRB's conduct here. *See, e.g., Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1174 (D.C. Cir. 1998). In *Flamingo Hilton*, the employer challenged the NLRB's authority to seek 10(j) injunctions and then act as a neutral arbiter in subsequent proceedings in the same matter before the Board. *Id.* The D.C. Circuit found "the combination of investigative and adjudicative functions does not, *without more*, constitute a violation of due process." *Id.* (emphasis added); *see also Kessel Food Markets, Inc. v. NLRB*, 868 F.2d 881, 887-88 (6th Cir. 1989) (rejecting due

---

[6] *See* Karen Weise, *NLRB sues Amazon over labor practices at Staten Island facility*, N.Y. Times (Mar. 17, 2022), *available* at https://tinyurl.com/5yrjt4b5 (discussing the consequential timing of the 10(j) action in relation to the JFK8 election) (last visited Oct. 10, 2024).

process challenge related to NLRB's pursuit of injunction and subsequent adjudication role in the same case). But here, there *is* more. This case does not present a generic structural "prosecutor and judge" violation. It presents a prosecutor who stands accused of conducting a biased prosecution being permitted to decide and declare her own innocence. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (finding cases in which the adjudicator has been "the target of . . . criticism from the party before him" trigger due process problems); *see also Horne v. Polk*, 394 P.3d 651, 659 (Ariz. 2017) (finding in the agency context that due process does not allow the same person to act as accuser, advocate and final decisionmaker).

To be sure, the NLRB's unconstitutional structure made this outcome possible by giving the NLRB Members authority to authorize 10(j) proceedings and to act as judges in representation cases. On the facts of this case, that structure permitted the NLRB Members to taint the representation election and then sit in judgment of themselves. That impermissible conflict of interest violates traditional notices of fairness and due process.

### b. The Court Has Subject Matter Jurisdiction to Hear the Separation of Powers Claim.

As with Amazon's Seventh Amendment claim, the Court has jurisdiction to entertain the separation of powers claim before final adjudication of the ULP proceeding. Proceeding before a judge that harbors an unconstitutional potential for bias constitutes a "here-and-now" injury under *Axon*. 598 U.S. at 191-92. Like in

*Axon*, Amazon's injury does not relate to the merits of the case or the NLRB Members' evidentiary decisions. Instead, it arises from a constitutional violation that the Board has no special expertise in assessing. Again, all three *Axon* factors support review.

Amazon's injury is not speculative, either. Two NLRB Members have already acted as judges in their recent rejection of Amazon's Objections in the R-Case. ROA.107 at ¶ 24. Now, those same NLRB Members with an unconstitutional potential for bias, plus a third colleague who voted to authorize the 10(j) action, stand poised to rule in the "summary judgment" ULP proceeding to punish Amazon and force it to the bargaining table. Amazon does not need to wait for the NLRB Members to finalize their action in the ULP proceeding to seek relief. *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) (finding claim challenging employment regulation ripe because "if injury is certainly impending, that is enough").

## B. Amazon Will Suffer Irreparable Harm Absent A Preliminary Injunction.

Amazon is being "subject[ed] to an illegitimate proceeding, led by an illegitimate decisionmaker" and is therefore suffering an injury that "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191. Absent injunctive relief, Amazon will continue to suffer "here-and-now" injuries in the ongoing NLRB

proceedings and, after those proceedings conclude, judicial review will "come too late to be meaningful." *Id.*

### 1. Amazon Is Suffering Irreparable Harm—Three Times over—in the Form of Ongoing Subjection to Unconstitutional NLRB Proceedings.

The Supreme Court and this Court have been crystal clear that a constitutional deprivation "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("It is well settled that the loss of [constitutional] freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction.").[7]

As discussed above, the NLRB's unconstitutional structure renders the pending NLRB proceedings against Amazon illegitimate. And although Amazon could seek post-adjudication judicial review of the Board's final order in the C-Case, Amazon's claim challenging unconstitutional removal protections "is not about that order." *Axon*, 598 U.S. at 191. It is instead about the process of being forced to

---

[7] The NLRB has previously argued that these statements implicate only First Amendment violations. Dkt. 25 at 20. *Deerfield* disproves the point, applying the principle to privacy rights outside of the First Amendment context. In any event, the NLRB has offered no basis for distinguishing between First Amendment and other constitutional violations in the irreparable harm analysis. *See BST Holdings*, 17 F.4th at 618 (recognizing that "dollars and cents" cannot capture the damage that the government inflicts when it deprives citizens of their rights); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (explaining that harm is irreparable "if it cannot be undone through monetary remedies").

endure an "illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* "That harm may sound a bit abstract," but the Supreme Court "has made clear that it is 'a here-and-now injury.'" *Id.* (citing *Seila Law*, 591 U.S. at 212). And after the NLRB proceedings conclude, the courts will be powerless to redress the harm. "A proceeding that has already happened cannot be undone." *Id.; cf. Cochran v. SEC*, 20 F.4th 194, 212–13 (5th Cir. 2021) (en banc) (reasoning that if an Article II removal claim is "meritorious," a plaintiff should not be forced to litigate before officers who are "unconstitutionally insulated from presidential control"), *aff'd by Axon*, 598 U.S. 175.

Finally, Amazon's deprivation of a right to a jury in the pending proceedings likewise constitutes a "here-and-now" injury causing irreparable harm. "[T]he irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings" where a litigant is "entitled under the Seventh Amendment to a jury trial." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022). That is the case here. After the NLRB proceedings conclude, Amazon will be unable to effectively obtain relief from being deprived of a jury. *Axon*, 598 U.S. at 191; *Ward*, 409 U.S. at 61–62 (upholding a party's right to a constitutionally proper adjudicatory process in the first instance).

So too for Amazon's due process claim. The same Board Members that authorized a prosecution against Amazon have judged—and now stand poised to

issue a final decision on—the merits of Amazon's objection to aspects of that prosecution in a related proceeding. The Board Members' dual-role as prosecutors and deciders in its case against Amazon presents a core separation of powers violation. After the NLRB issues a final decision on Amazon's Objections, it will be too late to provide effective relief. *Axon*, 598 U.S. at 191. Even if a court later orders rehearing without the conflicted Board Members who authorized the Section 10(j) petition, that remedy will not "guarantee complete relief," as later-appointed Board Members may be "influenced by their colleague's views when they rehear the case." *Williams*, 579 U.S. at 16.

## 2. The NLRB's Irreparable Harm Arguments Lack Merit.

The NLRB has offered two principal arguments in response to Amazon's claim of irreparable harm. Neither is persuasive.

*First*, the NLRB has argued that cases like *Collins*, 590 U.S. at 220, and *Community Financial Services Association of America v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"), require Amazon to show not only a constitutionally infirm provision, but also that the unconstitutional provision prevented the President from removing an official in a manner that impacted a discrete decision. Dkt. 25 at 10-11; *see* ROA.208-09. *Collins* and *CFSA* have no application here. Unlike the litigants in *Collins* and *CFSA*, who sought to invalidate a *past* administrative decision, Amazon seeks to stop a constitutionally-deficient proceeding from *occurring in the first*

*instance*. Amazon's claim is thus different in kind than the mine run of removal challenges (like *Collins* and *CFSA*) where litigants seek to avoid the consequences of a decision already rendered. As the Supreme Court stressed in *Axon*, an agency's "power to proceed at all" fundamentally differs from a challenge to "actions taken in the agency proceedings." 598 U.S. at 192. *Collins* and *CFSA* therefore pose no barrier for parties like Amazon seeking an "administrative adjudication untainted by separation-of-powers violations." *Cochran*, 20 F.4th at 210 n.16 (holding *Collins* inapplicable because plaintiff did not "seek to 'void'" a particular administrative act).[8]

*Second*, the NLRB has resisted *Axon*'s application to the irreparable harm inquiry. Dkt. 25 at 19; ROA.209-10. But limiting *Axon*'s rationale to the jurisdictional context makes little sense. Importantly, both consolidated cases in *Axon* arose in the context of requests for preliminary injunctions. *See Axon Enter. Inc. v. FTC*, 452 F. Supp. 3d 882, 886 (D. Ariz. 2020); *Cochran v. SEC*, No. 4:19-CV-066-A, 2019 WL 1359252, at *1 (N.D. Tex. Mar. 25, 2019). Moreover, the Supreme Court's decision cogently articulates the precise harm suffered by Amazon as (1) legally cognizable and (2) impossible to remedy once an agency reaches a

---

[8] The NLRB has also relied on the Tenth Circuit's decision in *Leacho, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024), to support its irreparable harm arguments. Dkt. 25 at 11, 19; ROA.209-10. Like *Collins* and *CFSA*, *Leacho* neither acknowledges nor analyzes the harm Amazon alleges here—being forced to participate in unconstitutional proceedings.

final decision. What *Axon* describes—by definition—is an irreparable harm. For that reason, several courts have not hesitated to apply *Axon* to conclude that constitutionally infirm administrative proceedings pose irreparable harm. *See, e.g.*, *Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *2 (D.C. Cir. July 5, 2023) (Walker, J., concurring); *Space Expl. Techs., Corp. v. Bell*, 701 F. Supp. 3d 626, 633-34 (S.D. Tex. 2023); *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024); *Space Expl. Tech. Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024); *cf. Cochran*, 20 F.4th at 212–13 ("[I]f Cochran's claim is meritorious, then withholding judicial consideration would injure her by forcing her to litigate before an ALJ who is unconstitutionally insulated from presidential control.").

The NLRB has also claimed that Amazon's reading of *Axon* would entitle challengers to preliminary injunctions in every case challenging an unconstitutional proceeding. Dkt. 25 at 20. This argument ignores that challengers must also demonstrate a likelihood of success on the merits. If they do so, the government has no legitimate objection to halting the constitutional violation.

The NLRB has no persuasive response to the irreparable harm posed by its ongoing proceedings against Amazon. Absent an injunction, those harms will continue and escape judicial review entirely.

**C.      The Balance Of Equities And Public Interest Weighs In Amazon's Favor, And An Injunction Is In The Public's Interest.**

The balance of equities tips strongly in Amazon's favor. Where "the Government is the opposing party," the "harm to the opposing party and the public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As set forth above, Amazon is likely to succeed on the merits of its claims. Absent judicial intervention, Amazon will be subjected to unconstitutional administrative proceedings. On the other hand, a preliminary injunction will do the NLRB "no harm whatsoever." *BST Holdings*, 17 F.4th at 618. "Any interest [the NLRB] may claim in enforcing an unlawful (and likely unconstitutional)" proceeding is "illegitimate." *Id.*; *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."); *Lujan v. U.S. Dep't of Educ.*, 664 F. Supp. 3d 701, 722 (W.D. Tex. 2023) ("Finally, and most importantly, the Department has no interest in enforcing a regulation that likely conflicts with Congress's unambiguous statutory mandate.").

Because of the "economic uncertainty" and constitutional violations at stake, a preliminary injunction is also in the public interest. *BST Holdings*, 17 F.4th at 618. "The public interest is . . . served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions—even, or perhaps *particularly*, when those decisions

frustrate government officials." *Id.* at 618–19 (emphasis in original); *see also Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("[T]he public is served when the law is followed."). There is no public interest in having an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499. The public interest is likewise not served where an administrative agency violates the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (quoting THE FEDERALIST No. 78, at 466 (C. Rossiter ed. 1961) (A. Hamilton)). A preliminary injunction would merely require the NLRB to stay the C-Case while this Court makes its determination. While Amazon may suffer constitutional deprivation absent relief, the Board does not stand to lose anything.

## II.    The District Court Effectively Denied Amazon's Request For A Preliminary Injunction.

The district court effectively denied Amazon's motion for a preliminary injunction when it failed to rule on Amazon's motion on or prior to September 27, 2024. Between filing suit on September 5 and submitting its Emergency Motion to this Court on September 27, Amazon repeatedly informed the district court of the exigency of its claims, apprised the district court of the NLRB's refusal to stay the underlying administrative proceedings, and requested a ruling on its motion in time to prevent the irreparable injuries that would result absent an injunction.

From the outset, Amazon emphasized that, after the Board-imposed deadline for Amazon's summary-judgment response, the Company could not halt the NLRB from consummating a final order in its unconstitutional proceeding against the Company. Amazon therefore faced an injury that could not be undone as soon as September 13, 2024—a deadline that was later extended to September 27. *See Fort Worth Chamber*, 100 F.4th at 534 (emphasizing that plaintiff "specifically requested a ruling on its preliminary injunction within 10 days" in its "initial filing" in concluding that district court effectively denied motion for preliminary injunction). On September 10, 2024, the district court scheduled a hearing to consider Amazon's requested relief on September 24. Thereafter, Amazon reiterated to the district court on multiple occasions its need for the court to rule on Amazon's motion on or prior to September 27, the deadline for Amazon's final submission to the Board. ROA.508-12; ROA.558-59; ROA.586; *see also Deerfield Med. Ctr.,* 661 F.2d at 338 (explaining that the denial of constitutional rights "for even minimal periods of time constitutes irreparable injury").

Amazon waited as long as it could for the district court to rule before seeking relief from this Court, refraining from filing its Notice of Appeal until approximately 7 a.m. Central Time on September 27. ROA.519-22. Amazon quickly thereafter filed its Emergency Motion for Injunction Pending Appeal and Administrative Stay on September 27, just prior to this Court's 2 p.m. Central Time deadline. Dkt. 11.

Amazon received this Court's order granting its Emergency Motion and imposing an administrative stay on September 30, 2024, the first business day the NLRB could have issued an irreparable adverse order against Amazon in the underlying C-Case. Dkt. 46.

In nearly identical circumstances, this Court recognized that a district court's failure to rule by close of business two days before the requested ruling date had the "'practical effect' of denying a preliminary injunction." *See NAACP v. Tindell*, 90 F.4th 419, 421-22 (5th Cir. 2024) (where ruling was requested by January 1 and court did not act by December 30, there was an effective denial creating appellate jurisdiction where appellant sought relief on December 31), *withdrawn and superseded on other grounds*, 95 F.4th 212 (5th Cir. 2024). Amazon's motion had been pending in the district court since September 10, was fully briefed, and was subject to hearing before the district court on September 24.

There can be no question that the district court had sufficient information and time to rule and was aware that it needed to take such action prior to September 27 to prevent Amazon from suffering irreparable harm. *See Fort Worth Chamber*, 100 F.4th at 532, 534 (holding that district court effectively denied motion for preliminary injunction filed 18 days prior to moving party filing emergency motion for injunction pending appeal and administrative stay). As this Court has recognized, "the urgency of preliminary relief as a means of preserving the opportunity for

*effective* permanent relief" is a key contextual consideration in this Court's effective denial analysis. *Id*. at 534 (emphasis in original). Despite having a clear understanding of the September 27 deadline by which Amazon requested the district court issue a ruling to ensure it could be afforded effective permanent relief, the district court declined to rule on the motion in accordance with Amazon's requested timeframe.

The Board has suggested that the district court did not effectively deny Amazon's motion because "the first time that Amazon raised the 'effective denial' argument . . . was September 26, 2024." Dkt. 25 at 22. This argument, however, ignores Amazon's numerous efforts prior to September 26—dating back to its initial filing—to apprise the district court of the need to rule on Amazon's motion prior to its September 27 deadline to submit a response to the General Counsel's motion for summary judgment in the underlying C-Case. Amazon "repeatedly requested swift review," including by making "requests for a ruling by specific dates," prior to the September 26 letter brief to the district court in which it explicitly clarified that it would consider its motion effectively denied after the morning of September 27. *See Fort Worth Chamber*, 100 F.4th at 534. Accordingly, the totality of the circumstances demonstrate that Amazon acted diligently in communicating its request for the district court to issue a ruling on the motion prior to September 27 and that the district court and the Board had sufficient notice that Amazon would

consider the district court's failure to issue a ruling by September 27 to have the practical effect of denying Amazon's requested relief.

## CONCLUSION

Amazon respectfully requests that the Court grant its motion for an injunction pending appeal, reverse the district court's effective denial of the preliminary injunction, and remand with instructions to enter a preliminary injunction. The Court should keep the injunction pending appeal in place until the district court enters a preliminary injunction consistent with the Court's instructions. *See Career Colls.*, 98 F.4th at 256 ("The stay pending appeal remains in effect until the district court enters the preliminary injunction.").

Respectfully submitted,

s/ *Amber M. Rogers*

Amber M. Rogers
HUNTON ANDREWS KURTH LLP
TX State Bar No. 24056224
arogers@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-979-3000

Kurt G. Larkin
HUNTON ANDREWS KURTH LLP
klarkin@huntonak.com
Riverfront Plaza, East Tower
951 East Byrd Street, Suite 700
Richmond, VA 23219
Telephone: 804-788-8200

*Counsel for Amazon.com Services LLC*

# <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitations of Rule 32(a)(7)(B), because it contains 9,844 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

*s/ Amber M. Rogers*
Amber M. Rogers
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2024, I electronically filed this brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. I further certify that Counsel for Appellees and Intervenor have been served by email at the address listed below:

| | |
|---|---|
| Tyler Wiese, tyler.wiese@nlrb.gov | Jeanne Mirer jmirer@workingpeopleslaw.com |
| Michael Dale, Michael.dale@nlrb.gov | Mathew Sollett msollett@bushgottlieb.com |
| Christine Flack, Christine.flack@nlrb.gov | Pamela M. Newport pamela@hsglawgroup.com |
| Julie Gutman Dickinson, jdg@bushgottlieb.com | Willie Burden wburden@teamster.org |
| David O'Brien Suetholz dave@hsglawgroup.com | Richard Griffin rgriffin@bredhoff.com |
| Edward M. Gleason ed@hsglawgroup.com | Hector De Haro hdeharo@bushgottlieb.com |

*s/ Amber M. Rogers*
Amber M. Rogers
*Counsel for Plaintiff-Appellant*