No. 24-50761

# United States Court of Appeals for the Fifth Circuit

AMAZON.COM SERVICES LLC,

*Plaintiff-Appellant*

v.

NATIONAL LABOR RELATIONS BOARD, A Federal Administrative Agency; JENNIFER ABRUZZO, In her official capacity as the General Counsel of the National Labor Relations Board; LAUREN MCFERRAN, In her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, In their official capacities as Board Members of the National Labor Relations Board, GWYNNE A. WILCOX, In their official capacities as Board Members of the National Labor Relations Board, DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board; MERRICK GARLAND,

*Defendants-Appellees*

and

TEAMSTERS AMAZON NATIONAL NEGOTIATING COMMITTEE,

*Intervenor.*

## On Appeal from the United States District Court for the Western District of Texas

## APPELLEES' BRIEF

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General Counsel*
KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*

CHRISTINE FLACK
MICHAEL S. DALE
  *Supervisory Attorneys*
TYLER J. WIESE
  *Senior Trial Attorney*
KENT COUPE
  *Honors Attorney*

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
(952) 703-2891

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as Defendant-Appellees are a government agency and government officials. Fifth Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

The Court has scheduled argument for November 8, 2024.  The NLRB appreciates the Court's expeditious scheduling of this matter and looks forward to the opportunity to address any questions from the Court.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF JURISDICTION ........................................1

COUNTERSTATEMENT OF ISSUES ......................................................2

COUNTERSTATEMENT OF THE CASE ................................................2

   I.  Structure and Functions of the NLRB ..................................2

   II. Administrative Proceedings...................................................5

   III.District Court Proceedings ..................................................8

SUMMARY OF THE ARGUMENT .......................................................11

STANDARD OF REVIEW.......................................................................13

ARGUMENT ............................................................................................13

   I.  This appeal is not properly before this Court because there was
no effective denial of Amazon's injunction request..............................13

   II. If this Court finds that an injunction was effectively denied, this
Court should remand the matter to allow the district court to make
particularized findings .........................................................................21

   III.Congress has jurisdictionally barred injunctive remedies in cases
growing out of labor disputes. ..............................................................22

   IV.Amazon fails to meet the high bar for a preliminary injunction...23

     A.  Amazon is not likely to succeed on any of its claims. .................25

        1. Amazon fails to establish any constitutional infirmities
regarding Board member removal protections (Count I) .........25

          a. Removal protections enjoyed by Board members are
constitutional .......................................................................25

          b. Amazon failed to show that the Board members' removal
protections cause harm .......................................................34

        2. Amazon is not likely to succeed on the merits of its Seventh
Amendment claim (Count II) ....................................................37

          a. The Court does not have jurisdiction over Amazon's
Seventh Amendment claim....................................................37

          b. Amazon's Seventh Amendment claim is contrary to
controlling law......................................................................41

3. Amazon is not likely to establish district court jurisdiction or to prevail on its combined-functions claim (Count III) ........ 47

B. Amazon failed to establish that it will experience any irreparable harm. .............................................................. 52

C. The balance of the equities and the public interest factors counsel against granting a preliminary injunction. ......................... 59

CONCLUSION ........................................................................... 65

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agwilines, Inc. v.* NLRB,
  87 F.2d 146 (5th Cir. 1936)..................................................44

*Alivio Medical Center v. Abruzzo*,
  No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024) ..............30

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
  309 U.S. 261 (1940)..........................................................61

*Anibowei v. Morgan*,
  70 F.4th 898 (5th Cir. 2023) ...............................................24

*Aunt Bertha v. NLRB*,
  2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) ................................57

*Axon Enterprise, Inc. v. FTC*,
  986 F.3d 1173 (9th Cir. 2021)..............................................49

*Axon Enterprise, Inc. v. FTC*,
  598 U.S. 175 (2023)...................................................... passim

*Baltimore Contractors, Inc. v. Bodinger*,
  348 U.S. 176 (1955).........................................................21

*Benisek v. Lamone*,
  585 U.S. 155 (2018).........................................................64

*Boire v. Pilot Freight Carriers, Inc.*,
  515 F.2d 1185 (5th Cir. 1975)..............................................48

*Bokat v. Tidewater Equip. Co.*,
  363 F.2d 667 (5th Cir. 1966)...............................................38

*Boys Markets, Inc. v. Retail Clerks Union*,
  398 U.S. 235 (1970).........................................................22

v

*BST Holdings, LLC v. OSHA,*
  17 F.4th 604 (5th Cir. 2021) ................................................................ 53

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) ......................................................... 35, 55

*Carson v. American Brands, Inc.,*
  450 U.S. 79 (1981) ........................................................................... 14

*CFPB v. CashCall, Inc.,*
  35 F.4th 734 (9th Cir. 2022) ............................................................. 35

*Chambless Enterprises, LLC v. Redfield,*
  508 F. Supp. 3d 101 (W.D. La. 2020) ................................................ 54

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
  526 U.S. 687 (1999) ........................................................................... 44

*Clarke v. CFTC,*
  74 F.4th 627 (5th Cir. 2023) ............................................................. 13

*Community Financial Serices Association of America, Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ..................................................... passim

*Collins v. Dep't of Treasury,*
  83 F.4th 970 (5th Cir. 2023) ............................................................. 36

*Collins v. Yellen,*
  594 U.S. 220 (2021) ................................................................... passim

*Consumers' Research v. Consumer Product Safety Commission,*
  91 F.4th 342 (5th Cir. 2024) ..................................................... passim

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
  661 F.2d 328 (5th Cir. 1981) ............................................................. 52

*Del. State Sportsmen's Association, Inc. v. Del. Dep't
of Safety & Homeland Security,*
  108 F.4th 194 (3d Cir. 2024) ............................................... 24, 54, 60

*Dennis Melancon, Inc. v. City of New Orleans,*
  703 F.3d 262 (5th Cir. 2012) ............................................... 53

*Direct Biologics, LLC v. McQueen,*
  63 F.4th 1015 (5th Cir. 2023) ............................................. 22

*Dish Network Corp. v. NLRB,*
  953 F.3d n.2 ................................................... 26, 28, 29

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012) ......................................................... 40, 49

*Elrod v. Burns,*
  427 U.S. 347 (1976) ...................................................... 52

*Energy Transfer, L.P. v NLRB,*
  No. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) .......... 57

*Entergy Miss., Inc. v. NLRB,*
  810 F.3d 287 (5th Cir. 2015) ............................................. 43

*Ex-Cell-O-Corp.,*
  185 NLRB 107 (1970) .................................................... 40

*Exela Enter. Sols., Inc. v. NLRB,*
  32 F.4th 436 (5th Cir. 2022) ............................................ 33

*Fall River Dyeing & Finishing Corp. v. NLRB,*
  482 U.S. 27 (1987) ....................................................... 62

*Flamingo Hilton-Laughlin v. NLRB,*
  148 F.3d 1166 (D.C. Cir. 1998) ......................................... 51

*Franks Bros Co. v. NLRB,*
  321 U.S. 702 (1944) ...................................................... 62

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
  561 U.S. 477 (2010) ...................................................... 39

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989) .................................................. 42, 58

*Horne v. Polk*,
  242 Ariz. 226 (2017) .............................................................. 51

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ........................................................ passim

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) ...................................... 28, 50

*In re Deepwater Horizon*,
  988 F.3d 192 (5th Cir. 2021) ............................................ 20

*In re Fort Worth Chamber of Com.*,
  100 F.4th 528 (5th Cir. 2024) ...................................... passim

*Int'l Union of United Autoworkers v. NLRB*,
  449 F.2d 1046 (D.C. Cir. 1971) ........................................ 40

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*,
  457 U.S. 702 (1982) ........................................................... 23

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ............................................. 41

*K & R Contractors, LLC v. Keene*,
  86 F.4th 135 (4th Cir. 2023) ............................................. 35

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  335 F.3d 357 (5th Cir. 2003) ............................................. 23

*Kessel Food Mkts., Inc. v. NLRB*,
  868 F.2d 881 (6th Cir. 1989) ............................................ 51

*Kim v. FINRA*,
  698 F. Supp. 3d 147 (D.D.C. 2023) ................................... 56

*L. Offs. of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023) ........................................ 35, 55

*Lambert v. Board of Comm'rs of Orleans Levy Dist.*,
  2006 WL 8456316 (E.D. La. Mar. 22, 2006) ...................... 55

*Leachco, Inc. v. CPSC,*
  103 F.4th 748 (10th Cir. 2024) .................................................. 35, 56, 57

*Loma Linda-Inland Consortium for Healthcare Education v. NLRB,*
  No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023) .................. 49

*Lytle v. Household Mfg., Inc.,*
  494 U.S. 545 (1990) ........................................................................ 58

*Mertens v. Hewitt Associates,*
  508 U.S. 248 (1993) ........................................................................ 47

*Meta Platforms, Inc. v. FTC,*
  F. Supp. 3d ---, No. 23-3562 (RDM), 2024 WL 1121424 (D.D.C. Mar.
  15, 2024) ......................................................................................... 50

*Munaf v. Geren,*
  553 U.S. 674 (2008) ........................................................................ 23

*Myers v. Bethlehem Shipbuilding Corp.,*
  303 U.S. 41 (1938) .......................................................................... 61

*NAACP v. Tindell,*
  90 F.4th 419 (5th Cir.) ................................................................... 21

*Nat'l Licorice Co. v. NLRB,*
  309 U.S. 350 (1940) ........................................................................ 42

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................ 25

*NLRB v. Haberman Const. Co.,*
  641 F.2d 351 (5th Cir. 1981) .......................................................... 38

*NLRB v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1937) ................................................................. 29, 44, 44, 60

*NLRB v. Sanford Home for Adults,*
  669 F.2d 35 (2d Cir. 1981) ............................................................. 51

*NLRB v. USPS,*
  477 F.3d 263 (5th Cir. 2007) .......................................................... 38

*Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville,*
   896 F.2d 1283 (11th Cir. 1990).............................................................52

*Phelps Dodge Corp. v. NLRB,*
   313 U.S. 177 (1941)..........................................................................40

*Public Services Co. of New Hampshire v. Town of West Newbury*
   835 F.2d 380 (1st Cir. 1987) .............................................................53

*Rodriguez v. Soc. Sec. Admin.,*
   No. 22-13602, --- F.4th---, 2024 WL 4352403
   (11th Cir. Oct. 1, 2024) ...................................................................35

*Sampson v. Murray,*
   415 U.S. 61 (1974) ..........................................................................52

*SEC v. Jarkesy,*
   144 S. Ct. 2117 (2024)..........................................................42, 45, 47

*Seila Law LLC v. CFPB,*
   591 U.S. 197 (2020)..................................................................passim

*Shanks v. City of Dallas,*
   752 F.2d 1092 (5th Cir. 1985).............................................................14

*Siegel v. LePore*
   234 F.3d 1163 (11th Cir. 2000)...........................................................53

*Sheffield v. Bush,*
   604 F. Supp. 3d 586 (S.D. Tex. 2022) ..................................................54

*Smith v. Johnson,*
   440 F.3d 262 (5th Cir. 2006).............................................................64

*Space Expl. Tech. Corp. v. NLRB,*
   No. W-24-CV-00203-ADA, 2024 WL 3512082
   (W.D. Tex. July 23, 2024) ................................................................57

*Stringer v. Town of Jonesboro,*
   986 F.3d 502 (5th Cir. 2021).............................................................20

*Tex. All. for Ret. Ams. v. Hughs,*
  976 F.3d 564 (5th Cir. 2020)...............................................................62

*Tex. Gulf Sulphur Co. v. NLRB,*
  463 F.2d 778 (5th Cir. 1972)...............................................................38

*Thryv, Inc.,*
  372 NLRB No. 22 (Dec. 13, 2022)...........................................37, 39, 46

*Tull v. United States,*
  481 U.S. 412 (1987)....................................................................45, 58

*United States v. Texas,*
  144 S. Ct. 797 (2024) .........................................................................21

*United Steelworkers v. Bishop,*
  598 F.2d 408 (5th Cir. 1979)...............................................................23

*Va. Elec. & Power Co. v. NLRB,*
  319 U.S. 533 (1943)............................................................................42

*Wheeler v. Wexford Health Sources, Inc.,*
689 F.3d 680 (7th Cir. 2012) ................................................................54

*White v. Carlucci,*
  862 F.2d 1209 (5th Cir. 1989)........................................................13, 24

*Wilson v. Off. of Violent Sex Offender Mgmt.,*
  584 F. App'x 210 (5th Cir. 2014) .........................................................24

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ...............................................................................24

*YAPP USA Automotive Sys., Inc. v. NLRB,*
  No. 24-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024)...............43

*YAPP USA Automotive Sys., Inc. v. NLRB,*
  No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024) ...............35, 57

**Statutes**

15 U.S.C. § 53(b).........................................................................33

15 U.S.C. § 2053(a) ................................................... 27

15 U.S.C. § 2064(g) ................................................... 33

28 U.S.C. § 1292(a)(1) ................................................. 1

28 U.S.C. § 1331 ....................................................... 1

29 U.S.C. § 101 ........................................................ 2

29 U.S.C. § 104 ........................................................ 2

29 U.S.C. § 107 .................................................... 2, 22

29 U.S.C. § 113 ....................................................... 23

29 U.S.C. § 151 ........................................................ 3

29 U.S.C. § 153(d) ............................................... passim

29 U.S.C. § 157 ........................................................ 3

29 U.S.C. § 160(f) ............................................... passim

42 U.S.C. § 1983 ...................................................... 44

## Regulations

29 C.F.R. § 101.37 .................................................... 48

29 C.F.R. § 102.67(g) ................................................. 59

## Other Authorities

H.R. Rep. 74-1371 .................................................... 26

NLRB Casehandling Manual, § 10282.2 .................................. 63

*Partisan Balance with Bite*,
118 Colum. L. Rev. 9 (2018) .......................................... 32

# COUNTERSTATEMENT OF JURISDICTION

This Court lacks appellate jurisdiction under 28 U.S.C. § 1292(a)(1). Plaintiff-Appellant Amazon.com Services LLC ("Amazon")'s theory that the district court "effectively denied" its requested preliminary injunction hinges on Amazon's unilateral imposition of an impossible decisional timeline on that court.

The district court has subject-matter jurisdiction over Count I of the complaint (tenure protections of Board members) under 28 U.S.C. § 1331, pursuant to the Supreme Court's holding in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). Count II (whether an administrative remedy sought by the General Counsel requires a jury trial) and Count III (Board's authorization of Section 10(j) relief in a separate administrative case) raise specific challenges arising from the facts of this case, not structural challenges. District court jurisdiction over Counts II and III is thus barred by Section 10(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(f), which channels such arguments to the courts of appeals upon review of a final order of the Board.

Additionally, the district court, and by extension, this Court, is jurisdictionally barred by statute from issuing injunctive relief under the Norris-LaGuardia Act because the case involves or grows out of a labor dispute. 29 U.S.C. §§ 101, 104, 107.

## COUNTERSTATEMENT OF ISSUES

1.    Can Amazon successfully claim effective denial of requested injunctive relief when it informs the lower court of the deadline for such relief less than 24 hours before filing an appeal?

2.    If this Court has jurisdiction, may this Court decide the preliminary injunction motion in the first instance?

3.    If the Court determines it appropriate to reach the merits of Amazon's request for a preliminary injunction, can Amazon meet the demanding burden required to warrant such relief?

## COUNTERSTATEMENT OF THE CASE

## I.    Structure and Functions of the NLRB

The National Labor Relations Board ("NLRB")[1] is the exclusive federal agency designated to protect employee rights under the NLRA,

---

[1] "NLRB" refers to the agency as a whole; "Board" refers to the five-member adjudicative body.

29 U.S.C. § 151, *et seq.*, to form and join unions, bargain collectively, and engage in concerted activity for mutual aid and protection, or to refrain from such activities. 29 U.S.C. § 157. The NLRA divides the powers of the General Counsel, which are prosecutorial, from those of the five-seat Board, which are adjudicative.[2] The Board is the sole statutory authority to adjudicate allegations that an employer or union has committed an unfair labor practice ("ULP"). *Id.* § 160. Such allegations arise from charges filed by members of the public; formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the charge and issues complaint, *id.* § 160(b), usually accompanied by a notice of hearing before an administrative law judge (ALJ). This administrative process is the exclusive mechanism provided by Congress to enforce most of the

---

[2] The General Counsel also exercises "general supervision over all attorneys employed by the [NLRB] (other than [ALJs] and legal assistants to Board members) and over the officers and employees in the regional offices." 29 U.S.C. § 153(d).

NLRA's proscriptions against unfair labor practices; employees, unions, and employers may not bring their own private actions to enjoin ULPs.

The five-seat Board issues final agency decisions in ULP cases under Section 10(c) of the NLRA, conducts and certifies the outcome of union-representation elections under Section 9, and promulgates rules and regulations under Section 6. *Id.* §§ 160(c), 159, 156. Its members are appointed by the President with the advice and consent of the Senate. *Id.* § 153(a). Although not specifically required by statute, historically, Presidents have made Board appointments consistent with the general principle that members of the President's party will occupy a bare majority of its seats. *See* 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act ch. 31.I.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017).[3] Board members serve staggered terms of up to five years, and may only be removed "for neglect of duty or malfeasance in office." *Id.*

---

[3] *See generally* Members of the NLRB Since 1935, https://www.nlrb.gov/about-nlrb/who-we-are/the-board/members-of-the-nlrb-since-1935. The last time a President appointed a fourth member of his own party was 1955.

Orders of the Board are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. *Id.* § 160(e). Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. *Id.* § 160(f).

## II.  Administrative Proceedings

The case Amazon seeks to enjoin on an emergency basis began with the filing of a representation petition by the Amazon Labor Union, which has been succeeded by the Teamsters Amazon National Negotiating Committee (TANNC), almost three years ago on December 22, 2021. ROA.17. That petition sought to represent a bargaining unit of over 8,000 employees at Amazon's JFK8 facility in Staten Island, New York. ROA.17-18. The NLRB's Region 29 office in Brooklyn, New York, conducted an in-person election, pursuant to a stipulated election agreement between the parties, in late March 2022. TANNC prevailed by approximately 500 votes. ROA.17-18.

Following this election, Amazon filed a series of election objections. ROA.18. These objections were transferred, on Amazon's

motion, to the NLRB's Region 28 office in Phoenix, Arizona. ROA.19.
The parties subsequently conducted 24 days of hearing on these
objections in June and July 2022. ROA.19. The hearing officer (an
employee of Region 28) issued a Report on Objections on September 1,
2022, recommending that all objections be overruled. ROA.19. The
Regional Director for Region 28 then issued a decision affirming the
hearing officer's report and certified TANNC as the representative of
the Staten Island bargaining unit on January 11, 2023. ROA.19-20.

After the Regional Director's decision and certification, Amazon
filed a request for review with the Board of the Regional Director's
decision. ROA.20. The Board, in a decision issued by Chairman
McFerran and Member Prouty, denied this request for review on
August 29, 2024, over the dissent of Member Kaplan. ROA.20.

Meanwhile, as the representation proceedings were ongoing,
TANNC requested that Amazon recognize it as the representative of the
Staten Island bargaining unit on April 2, 2022. ROA.21. Amazon denied
this demand for recognition, in order to obtain circuit court review of
the Board's representation-case determination through the "technical"
8(a)(5) process. TANNC thereafter filed a ULP charge, alleging an

unlawful refusal to bargain by Amazon, with the NLRB's Region 29 office in Brooklyn. ROA.20-21. On July 12, 2023, the Regional Director for Region 29 issued complaint, and on August 23, 2023, Counsel for the General Counsel filed a Motion for Summary Judgment and Motion to Transfer proceedings to the Board. ROA.21.

That same day, the Board granted the transfer motion and issued a notice to show cause as to why the General Counsel's Motion for Summary Judgment should not be granted. ROA.21. Amazon filed an opposition on September 14, 2023. ROA.22. About one year later, after the Board denied Amazon's request for review, on August 30, 2024, the Board issued a second notice to show cause. ROA.22. The initial deadline to respond to this notice was September 13, 2024; this deadline was extended, at Amazon's request, to September 27, 2024. *Amazon.com Servs. LLC,* No. 29-CA-310869 (NLRB Sept. 11, 2024) (order extending time), https://apps.nlrb.gov/link/document.aspx/ 09031d4583e2475f. On the evening of September 27, 2024, after filing its appeal with this Court, Amazon responded to the second notice to show cause. *Amazon.com Servs. LLC,* No. 29-CA-310869, Opposition to Motion for Summary Judgment (Sept. 27, 2024),

https://apps.nlrb.gov/link/document.aspx/09031d4583e45cf4. In this

response, for the first time in nearly three years of ongoing proceedings,

Amazon raised its constitutional claims before the agency. *Compare id.,*

*with, e.g.,* Answer to Administrative Complaint, (Sept. 14, 2023)*,*

https://apps.nlrb.gov/link/document.aspx/09031d4583b4ed03, *and*

Opposition to Summary Judgment (Sept, 14, 2023),

https://apps.nlrb.gov/link/document.aspx/09031d4583b4ed3d.

## III. District Court Proceedings

On September 5, 2024, after learning that its request for review in

the representation proceeding had been denied by the Board, Amazon

filed a federal complaint in the Western District of Texas, San Antonio

Division. ROA.13. This complaint contains three counts: (1) Board

members are unconstitutionally protected from removal by the

President; (2) the Board's remedial authority triggers a right to a jury

trial under the Seventh Amendment; and (3) the Board, in this case,

unconstitutionally wielded executive, judicial, and legislative authority,

in violation of separation of powers principles in the Constitution.

ROA.23-32.

On September 10, 2024, Amazon filed a Motion for a Temporary Restraining Order and Preliminary Injunction in the district court. ROA.76. That same day, the NLRB filed a Motion to Transfer. ROA.150. The lower court thereafter set a deadline for responses for the opposing motions on September 19, 2024, and scheduled a hearing for September 24, 2024. ROA.7. Amazon did not object to this scheduling order or otherwise seek to further expedite the matter. *See* ROA.6-8.

An in-person hearing was held before Judge Xavier Rodriguez on September 24, 2024. ROA.11. At that hearing, Judge Rodriguez repeatedly questioned the parties about when the Board could be expected to act on the General Counsel's Motion for Summary Judgment. ROA.558-60. Amazon informed the court that it was unsure when a ruling could issue, but it was likely "weeks" after the September 27, 2024 deadline for filing its response to the notice to show cause. ROA.558. Near the conclusion of that hearing, Judge Rodriguez invited the parties to submit supplemental briefing by 12:00pm on September 27, and promised to rule as soon as practicable. ROA.613-14. Amazon again did not object to the timing of this supplemental briefing, or otherwise indicate when it required a ruling. *See id.*

On September 26, 2024, Amazon filed its supplemental letter brief with the lower court. ROA.508. In this briefing, *for the first time*, Amazon indicated to the court that it would consider its request for relief "effectively denied" if it did not receive a ruling by the following day, September 27. ROA.508-09. Thereafter, at 5:46am Central time, September 27, 2024, Amazon filed its notice of appeal on the theory that the lower court's inaction since its September 26 letter constituted an "effective denial" of its request for injunctive relief. *See* ROA.12.

Amazon next filed an Emergency Motion for Injunction Pending Appeal and Administrative Stay on the afternoon of September 27, 2024. [Doc. 11.] This Court scheduled a deadline for the NLRB to respond by September 29, 2024. [Doc. 21.] The NLRB filed a timely opposition. [Doc. 25.] On September 30, 2024, a motions panel of this Court (Judge Graves, dissenting in part) issued a summary order granting, in relevant part, Amazon's request for an administrative stay. [Doc. 46-2].

Meanwhile, three days after Amazon first notified the lower court of the "deadline" for when it would consider its injunction effectively denied, that court issued an order granting the NLRB's motion to

transfer venue and denying Amazon's request for a temporary

restraining order. ROA.528-41.

## SUMMARY OF THE ARGUMENT

Amazon buries the lede by largely ignoring the primary issue

before this Court. That issue is whether a party can claim an "effective

denial" of injunctive relief when it notifies the lower court of the

"deadline" for this relief less than 24 hours before filing its appeal. The

answer to this question must be no. While this Court has recognized

that district court delay in ruling on an injunction can "effectively deny"

such relief, that argument is premised on the party requesting relief

consistently and firmly informing the lower court of its need for a ruling

on a timely basis. Amazon did the opposite here, sandbagging the lower

court and the other parties to this proceeding by waiting until

September 26 to inform the court of its need for a ruling by September

27. Principles of equity and respect for orderly judicial process demand

that this behavior not be rewarded.

In the event that this Court should find, despite these anomalous

circumstances, that preliminary relief was "effectively denied," this

matter should be remanded to the lower court with instructions to

decide the motion. This disposition would accord with this Court's recent practice, and there's no good reason to depart from it here.

Should this Court nonetheless find it appropriate to exercise appellate jurisdiction and to resolve the merits of the appeal, the case should be remanded with instructions to deny Amazon's preliminary injunction motion. Jurisdiction is lacking to issue injunctive relief pursuant to the Norris-LaGuardia Act. Further, Amazon failed to establish subject-matter jurisdiction over its Seventh Amendment and combination-of-functions claims, which must be channeled through the NLRA's exclusive statutory review scheme. And setting aside these jurisdictional infirmities, those two claims and Amazon's challenge to Board member removal protections all fail on their merits under controlling precedent. Amazon's assertions of irreparable harm are unsupported and are undermined by Amazon's own years-long participation without objection in the underlying administrative process. Finally, the equities and public interest disfavor Amazon's request for injunctive relief; Amazon's interests pale in comparison to the harm an injunction would cause to the NLRA rights of thousands of

JFK8 employees, and to the public at large, which relies on the NLRB's peaceful resolution of labor disputes to prevent injuries to commerce.

## STANDARD OF REVIEW

Just as the decision to grant or deny a preliminary injunction "may be reversed on appeal only by a showing of abuse of discretion," *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (cleaned up), an injunction request that was purportedly effectively denied is reviewed under the same standard. *See Clarke v. CFTC*, 74 F.4th 627, 640 (5th Cir. 2023).

## ARGUMENT

### I. This appeal is not properly before this Court because there was no effective denial of Amazon's injunction request.

Amazon argues that its preliminary injunction request was denied because the court below did not act with sufficient promptness. But "appeal cannot be achieved simply by asserting that the trial court has failed to act as promptly as wished by a party seeking an injunction." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 535 (5th Cir. 2024) (citation omitted). That is what Amazon attempts here, where it imposed an arbitrary unilateral deadline *of the next morning* on the

district court in a supplemental letter brief, and then noticed its appeal before dawn.

As the Supreme Court held in *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), a case involving a district court's effective refusal to enter a consent decree, appeals challenging the "practical effect of refusing an injunction" lie only where a litigant can show "serious, perhaps irreparable, consequence," and that judicial inaction can only be "effectually challenged" by immediate appeal. *Id.* at 84. This strict standard is limited to truly exigent circumstances and reflects Congress's judgment that such appeals are a "limited exception to the final-judgment rule." *Id.* As this Court has elaborated, a district court's failure to act must have a "direct impact on the merits of the controversy." *Shanks v. City of Dallas*, 752 F.2d 1092, 1095 (5th Cir. 1985). "There must be a legitimate basis for the urgency." *Fort Worth,* 100 F.4th at 535.

Any claim of an "effective denial" in this case is belied by Amazon's own actions. In its Complaint, Amazon did not request relief by a certain date. ROA.33-34. The same holds true for its Motion for a Preliminary Injunction and Temporary Restraining Order. *See* ROA.76-

95. When the district court issued its initial briefing and hearing schedule, Amazon did not object or request any further expedition. And in its opposition to the Board's September 18 motion to transfer, Amazon again neglected to inform the court of any "deadline." ROA.218-32. Even during the motions hearing before Judge Rodriguez on September 24, Amazon *yet again* failed to indicate any need for a ruling by September 27. *See* ROA.613-14. It first did so in a post-hearing supplemental letter brief on September 26, asserting that the district court's "effective deadline" would occur the next morning, after which Amazon would "be forced to consider its motion for injunctive relief denied." ROA.509.

These facts stand in marked contrast to the primary authority relied upon by Amazon, *Fort Worth,* above. As this Court noted, "whether a district court fails to act promptly depends entirely on context." 100 F.4th at 534. The *Fort Worth* plaintiffs "acted diligently" in pressing their claims and filed their complaint within *two* days of the challenged agency action. *Id.* Their complaint unequivocally requested a ruling within ten days. *Id.* After the lower court failed to act within this first deadline, plaintiffs renewed their request for expedited relief,

setting a second deadline. And only after the lower court issued a ruling denying its renewed request for expedited relief did plaintiffs file their effective denial appeal. *Id.* In finding effective denial of relief, this Court found that "the Chamber repeatedly requested swift review . . . [through] its repeated requests for a ruling by specific dates so as to avoid substantial compliance with the [agency action.]" *Id.* at 535-36.

In an attempt to fit its conduct into the *Fort Worth* framework, Amazon distorts the record. Amazon claims that it placed the lower court on notice of the September 27 deadline throughout the proceedings. Br. 41. The only evidence Amazon musters in support of this assertion is its September 26 letter and certain portions of the transcript from the September 24 hearing. An eleventh-hour letter self-evidently provides no basis for a claim of "diligence." And the cited hearing testimony refutes, rather than supports, any claim that Amazon put the court on notice of a deadline. The first cited section (ROA.558-59) involved the court questioning counsel for both sides about when the Board could be expected to rule on the General Counsel's pending Motion for Summary Judgment; in response, Amazon's counsel responded that it takes "normally weeks" for the

Board to rule on such a motion. ROA.558. The second cited transcript portion merely involves counsel for Amazon informing the court that the Board "theoretically[,] . . . once we file the motion for summary judgment, could issue an order Monday [September, 30]." ROA.586. No other testimony, filing, or documentary evidence is cited by Amazon because none exists.

Any doubt regarding this conclusion is resolved by Amazon's conduct at the conclusion of the hearing. The court informed the parties: "If anybody wants to file just a letter brief, just by way of letter for any other points you think we missed today, you have leave to do so. Do so by Friday [September 27], and I'm going to try to get this out as soon as I can. This is a very complex issue." ROA.614. In response, Amazon's counsel requested what time the court wanted the letter briefing submitted on Friday—suggesting, at the very least, that it had no objection to this timeline. *Id.*[4] Thereafter, it came as a surprise to

---

[4] Amazon's behavior at the outset of the September 24 hearing also bears mention. The court first asked for Amazon's position on TANNC's motion to intervene; in response, Amazon pointed to the fact that TANNC's motion had been filed on Friday, September 20, and stated "[t]he rules give us 14 days to respond. We're not prepared to address substantively this morning because of the timing." ROA.548. While this

NLRB counsel, and almost certainly the district court as well, when

Amazon sprung a deadline of September 27 in its September 26 filing.[5]

Indeed, somewhat uniquely here, the parties do not have to guess

about how much time the lower court would have needed to issue a

decision. That answer is *three calendar days*—the time it took between

September 26, when Amazon informed the lower court of its effective

denial "deadline," and September 29, when the court issued its ruling.

In contrast to *Fort Worth*, the district court here acted with notable

speed in ruling on the parties' motions after being informed of Amazon's

artificial deadline. This only serves to further show that, had Amazon

acted with even a modicum of diligence in pressing its effective-denial

argument, the lower court almost certainly could have accommodated

its request.

---

response rightly drew the lower court's ire, it also serves to further
demonstrate Amazon's failure to press any expedited timeline.

[5] Although the NLRB initially suspected that Amazon might seek to
manufacture an effective-denial argument to avoid or delay transfer to
a proper venue (as addressed in the NLRB's Motion to Transfer
(ROA.157)), nothing Amazon did or said afterwards gave the parties or
the district court reason to believe that Amazon would try to impose a
decisional deadline with barely one day's notice.

Setting aside Amazon's dilatory conduct and hide-the-ball tactics in district court, the reason for Amazon's September 27 "deadline" also lacks credibility. Again, *Fort Worth* is illustrative. There, the challenged agency action was a final rule that the plaintiffs alleged would impose onerous compliance requirements even before the rule's formal effective date. And the agency had "created a short runway" by establishing a quick effective date for the rule. 100 F.4th at 534.

The alleged "urgency" here is nothing like that posed by the soon-to-be-effective regulation in *Fort Worth*. Amazon pegged its "effective denial" assertions to a filing deadline in an administrative proceeding that it had participated in *for years* without objection. There was no indication that the Board would be ruling the same day as Amazon's filing—indeed, Amazon's counsel conceded this would be unlikely at the September 24 hearing. ROA.558-59, 586. And even if the Board acted with unusual speed, the mere issuance of a decision on the summary judgment motion would not have been comparable to the sort of alleged compliance burdens the plaintiffs in *Fort Worth* sought to avoid, 100 F.4th at 535.

If Amazon's effective denial claim here were accepted, the longstanding principle that this is a "court of review, not first view" would be turned on its head. *Stringer v. Town of Jonesboro,* 986 F.3d 502, 509 (5th Cir. 2021). Litigants would be encouraged to set artificial and impossible-to-satisfy deadlines in the hopes of bypassing the district court whenever they suspect that they may receive an unfavorable ruling. This would not only waste the district court's time and threaten to undermine public confidence in the judicial system, it would also strip away each district court's "broad discretion and inherent authority to manage its docket." *In re Deepwater Horizon,* 988 F.3d 192, 197 (5th Cir. 2021). It would also burden this Court with a constant stream of emergency requests unaccompanied by a lower court ruling that would otherwise enhance the decisional process.

If plaintiffs "cannot simply say they need an expedited ruling and then appeal by claiming effective denial when they don't get it on their preferred timeline," *Fort Worth*, 100 F.4th at 535, then Amazon—which provided *no* notice of a need for an expedited ruling to the lower court until less than 24 hours before it filed this appeal—does not qualify. Certainly, courts cannot be expected to divine a deadline based on the

"totality of circumstances," as Amazon claims. Br. 43.[6] Amazon's preliminary injunction motion was not effectively denied; rather, Amazon gave the district court effectively no time to rule before hastily and deliberately pulling the plug.

## II. If this Court finds that an injunction was effectively denied, this Court should remand the matter to allow the district court to make particularized findings.

Amazon's attempt at piecemeal appellate review should be rejected. But if this Court believes that an injunction was effectively denied, this Court should not accept Amazon's immodest invitation to decide a question jurisdictionally assigned to be heard and decided in the first instance by a trial court. All courts must prevent "unauthorized extension or reduction of jurisdiction, direct or indirect, [from] occur[ring] in the federal system." *Balt. Contractors v. Bodinger*, 348

---

[6] *NAACP v. Tindell*, 90 F.4th 419, 422 (5th Cir. 2024), *withdrawn and superseded*, 95 F.4th 212 (5th Cir. 2024), cited by Amazon (Br. 42) does not help. Administrative stays like the one issued there "do not typically reflect the court's consideration of the merits of the stay application." *United States v. Texas*, 144 S. Ct. 797, 798 (2024). And this Court never decided the precise contours of the "effective denial" doctrine because the district court there, after some initial procedural confusion, expressly denied plaintiffs' motion. *Tindell*, 90 F.4th at 422. Indeed, the confusion created in that case by plaintiffs' effective denial claim demonstrates why this doctrine should be applied sparingly.

U.S. 176, 181 (1955), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988). As such, if Amazon has established appellate jurisdiction, the matter should be remanded with instructions to decide the pending motion. This would allow the district court to make particularized findings regarding, for instance, the impact of Amazon's delay on the balance of equities, and what—if any—significant and irremediable harm Amazon would suffer in the absence of preliminary relief. *See Tindell*, 90 F.4th at 422 (district court directed to issue final appealable order); *Chamber of Com. of U.S. v. CFPB*, No. 24-10248, Unpublished Order, Doc. 105-1 (5th Cir. Apr. 30, 2024) (citing *Direct Biologics, LLC v. McQueen*, 63 F.4th 1015, 1023-24 (5th Cir. 2023)).

## III. Congress has jurisdictionally barred injunctive remedies in cases growing out of labor disputes.

Absent a specific exception, Congress has jurisdictionally barred all "court[s] of the United States" from issuing injunctions "in any case involving or growing out of a labor dispute." 29 U.S.C. § 107; *see id.* § 101 *et seq.* (Norris-LaGuardia Act); *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970). This case unquestionably "grows out of" a labor dispute, which "includes any controversy concerning terms or

conditions of employment, or concerning the association or representation of persons in negotiating, … or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113. Norris-LaGuardia's scope is clear, broad, and admits no non-statutory exception, *see Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 711 (1982); *United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979). And it jurisdictionally precludes an injunction here because "'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals*, 457 U.S. at 712-13 (citation omitted).

## IV. Amazon fails to meet the high bar for a preliminary injunction.

"A preliminary injunction is an extraordinary and drastic remedy" that "should never be awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (cleaned up). The "decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363-64 (5th Cir. 2003) (citation omitted). A plaintiff must make "a clear showing" that it is "entitled to such relief."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

To make a showing warranting injunctive relief, a plaintiff must establish "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 551 (2024) (citation omitted). A plaintiff must satisfy all four requirements to obtain a preliminary injunction. *See Wilson v. Off. of Violent Sex Offender Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014) (mem.). Likelihood of success on the merits is "just one piece of the puzzle," and finding an entitlement to a preliminary injunction on this factor alone would "collapse[] the four factors into one." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024), *petition for cert. filed,* No. 24-309 (Sept. 18, 2024). Irreparable harm, the second factor, must "without question . . . be satisfied by independent proof, or no injunction

may issue." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). Such

harm must be "likely" and not a mere possibility. *Winter*, 555 U.S. at 20.

Finally, the third and fourth factors of the preliminary injunction

analysis—harm to others and the public interest—"merge when the

Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435

(2009).

> A.   *Amazon is not likely to succeed on any of its claims.*

Assuming the Court even reaches the question of whether

preliminary relief is appropriate here, Amazon's claims are not likely to

succeed.

> 1.   <u>Amazon fails to establish any constitutional
> infirmities regarding Board member removal
> protections (Count I).</u>

>> a.   Removal protections enjoyed by Board
>> members are constitutional.

Amazon's first count alleges that Board members are

unconstitutionally insulated from removal by the President. This

argument, however, is foreclosed by *Humphrey's Executor v. United*

*States*, 295 U.S. 602 (1935). In that decision, the Supreme Court held

that members of the Federal Trade Commission (FTC), who were part

of a multi-member, decisionmaking body of experts, could be

constitutionally insulated from removal by the President. *Id.* at 630-32.

The Court reasoned that Congress's grant of tenure protections was constitutional and did not interfere with the President's authority because FTC commissioners performed "quasi-legislative and quasi-judicial" functions. *Id.* at 629. Relying on *Humphrey's Executor*, Congress created the NLRB less than two months after that decision and modeled it after the FTC. *See* H.R. Rep. 74-1371, at 4 (1935) (stating that the NLRB "is to have a similar status to that of the Federal Trade Commission" and describing express removal protections for Board members as "desirable in the light of" *Humphrey's Executor*), *reprinted in*, 2 NLRB, Legislative History of the National Labor Relations Act, 1935, at 3255 (1949); *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) (noting that the NLRB and FTC share certain salient features).

Amazon contends that because Board members "wield substantial executive power," *Humphrey's Executor* does not apply. Br. 16. This position hinges on the implicit assertion that *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), radically upended decades of precedent and practice by supplanting *Humphrey's Executor* with a new legal rule that

allows principal officers serving on multi-member boards or commissions to receive removal protections only if they do not exercise "substantial executive power." Amazon's claim is particularly surprising given that *Seila Law* expressly disavowed that it was disturbing any of the Court's prior precedents. In striking down a removal protection in the "novel context" of an agency headed by a single individual, the Court was explicit that its decision did "not revisit . . . prior decisions allowing certain limitations on the President's removal power." *Id.* at 204.

Indeed, the central premise of Amazon's argument was recently rejected by this Court in *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024), *petition for cert. filed*, No. 23-1323 (June 18, 2024). In that decision, this Court addressed a challenge to removal protections for commissioners on the Consumer Product Safety Commission (CPSC), *id.* at 346-47, who receive identical removal protections as NLRB members. *Compare* 15 U.S.C. § 2053(a), *with* 29 U.S.C. § 153(a). This Court broadly held that *Humphrey's Executor* "still protects *any* 'traditional independent agency headed by a multimember board.'" 91 F.4th at 352 (quoting *Seila Law*, 591 U.S. at

207) (emphasis added). Notably, this Court found that the CPSC "exercises substantial executive power (in the modern sense)," *id.* at 353-54, and listed relevant examples of such power, *id.* at 346 (citing CPSC's "authority to promulgate safety standards and to ban hazardous products" as well as its "power to launch administrative proceedings, issue legal and equitable relief, and commence civil actions in federal courts," including actions seeking injunctive relief and even civil monetary penalties). Nonetheless, this Court found that these powers did not affect the validity of the CSPC commissioners' removal protections.[7] *See also Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) (rejecting attempt to limit *Humphrey's Executor* only to the FTC as it existed in 1935).

Further, in assessing the continuing vitality of *Humphrey's Executor* and rejecting arguments nearly identical to the ones Amazon raises here, this Court identified three key characteristics of the CPSC

[7] In comparison, the Board's authority is significantly less robust. Although the Board also has rulemaking authority, it cannot initiate administrative proceedings, seek civil monetary penalties, or provide any other form of nonremedial relief. 29 U.S.C. § 160(a), (c). In addition, the Board's orders are not self-enforcing. *Dish Network*, 953 F.3d at 375 n.2. As such, the justification for upholding the removal protections at issue here is at least as strong as in *Consumers' Research*.

that make its removal restrictions distinguishable from those that the Supreme Court declared unconstitutional in *Seila Law*. As enumerated below, all three features apply with equal force to the NLRB.

First, this Court indicated that "the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." 91 F.4th at 354 (quoting *Seila Law*, 591 U.S. at 220). "In other words, historical pedigree matters," and unlike agencies where removal protections were found unconstitutional, this Court found that the CPSC "has history on its side." *Id.* If this is true for the CPSC—which was founded in 1972—it is undoubtedly so for the NLRB, which was founded in 1935, modeled after the FTC, and survived an immediate constitutional challenge after its enactment. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 49 (1937); *Dish Network*, 953 F.3d at 375 n.2.

Second, this Court noted that "the [CPSC] does not share the defining feature that the Supreme Court in *Seila Law* relied on to hold the [Consumer Financial Protection Bureau (CFPB)] unconstitutional"—that is, leadership by a single director, who was shielded from removal by the President. 91 F.4th at 354. The NLRB, as

"a prototypical traditional independent agency, run by a multimember board," falls equally within this reasoning. *Id.* (cleaned up).

Third, this Court found that "[CPSC] does not have any of the features that combined to make CFPB's structure even more problematic in *Seila Law*." *Id.* (cleaned up). As with the CPSC, the NLRB's "staggered appointment schedule means that each President *does* have an opportunity to shape [its] leadership and thereby influence its activities." *Id.* (cleaned up). Nor does the NLRB "receive funds outside the appropriations process," such that the President would be denied influence over the agency's activities "via the budgetary process." *Id.* at 355 (cleaned up). Thus, the Board lacks any of the features that could take it outside the scope of *Humphrey's Executor. See Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *7 (N.D. Ill. Sept. 13, 2024) ("The organizational features of the NLRB match the profile of an agency that fits within the parameters of the *Humphrey's Executor* removal exception.").

Ultimately, Amazon's claim fails even on its own terms because Amazon cannot show that Board members somehow exercise more "substantial" executive power than FTC or CPSC commissioners whose

removal protections are indisputably valid under precedent that binds this Court. Amazon appears to take particular issue with the Board's ability to engage in rulemaking, investigate violations of the NLRA, and determine appropriate remedies for violations of the NLRA. *See* Br. 17-18. But the CPSC's similar (and arguably greater) powers did not affect the Fifth Circuit's decision to uphold removal protections for CPSC commissioners, *see* above at 28.

What remains of Amazon's removal-based claim are two half-hearted attempts to distinguish the structure of the NLRB from the CPSC and FTC. Br. 19-21. First, Amazon claims, for the first time in this litigation, that *Humphrey's Executor* and *Consumers' Research* do not cover the Board because there is no explicit statutory limitation in the NLRA on the number of Board members from the President's political party that could serve on the Board at any one time. *Id.* at 20. While the NLRA itself does not set a cap on the number of Board members from a particular party like the FTC Act does, historically, Presidents have made Board appointments consistent with the general principle that members of the President's party will occupy a bare majority of the seats on a multimember commission. *See* Brian D.

Feinstein & Daniel J. Hemel*, Partisan Balance with Bite*, 118 Colum. L. Rev. 9, 32 (2018) (classifying the NLRB as an agency with a partisan-balance requirement "based on a firmly entrenched norm favoring partisan balance on that body"); *see also id.* at 55 (finding "little to suggest that the difference between the NLRB's partisan balance convention and the statutory [partisan-balance requirements] applicable to other agencies has any effect on ideological composition"); *see also* above at 4 n.3. And courts have been clear that, when considering the applicability of the *Humphrey's Executor* exception, ""[p]erhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." *Seila Law*, 591 U.S. at 220 (cleaned up); *Consumers' Rsch.*, 91 F.4th at 354 ("historical pedigree matters"). Here, historical precedent shows that Presidents of both parties have for decades appointed no more than three Board members from the same party— and this practice continues to date.[8]

---

[8] On May 23, 2024, recognizing that the Board is "required, by … longstanding practice, to include bipartisan membership," President Biden announced the nomination of Joshua L. Ditelberg to serve as a Republican member of the Board. *President Biden Announces Nominees*,

Second, Amazon argues that Board members cannot be protected from removal because the NLRB's structure is bifurcated between a General Counsel and the Board. Br. 20. But this distinction falls apart under even modest scrutiny. The NLRB's General Counsel is removable at will by the President. *See Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022). And it is the General Counsel who performs the "quintessentially prosecutorial functions" of the Agency. *Id.* at 443.[9] So, if anything, the NLRA's channeling of certain powers to a politically accountable General Counsel makes the Agency's structure *less* concerning from a separation-of-powers perspective.

At bottom, the NLRB is a traditional independent agency headed by a multi-member board, and *Humphrey's Executor* protects the members of any such board from arbitrary removal. Whatever else may

---

The White House, https://www.whitehouse.gov/briefing-room/statements-releases/2024/05/23/president-biden-announces-nominees/ (May 23, 2024).

[9] Though Amazon argues that the Board's sparingly exercised authority under Section 10(j) of the NLRA, 29 U.S.C. § 160(j), to seek temporary injunctions in district court pending the Board's resolution of unfair-labor-practice cases is "prosecutorial" (Br. 21), this is insufficient to remove the Board from the scope of *Humphrey's Executor*. The FTC and the CPSC have the power to authorize similar injunction lawsuits. *See* 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g).

be said about the types of powers wielded by an agency or distinctions of statutory language, this Court has spoken clearly, and that clear statement precludes Amazon from showing a likelihood of success on the merits of this claim.

> b. Amazon failed to show that the Board members' removal protections cause harm.

In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court made clear that removal-restriction problems are materially distinct from officer-appointment problems. The Court held that when an official is "properly *appointed*," there is no claim that he "exercise[d]…power that [he] did not lawfully possess," and thus, "there is no reason to regard any of the actions taken…as void." *Id.* at 257-58. The Court explained that a showing of an infirm removal provision, in the abstract, is not enough to void agency action; rather, a plaintiff must show that the removal provision "cause[d] harm" to them. *Id.* at 259-60.

Subsequently, this Court explained that under *Collins*, there are "three requisites for proving harm" for removal claims: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the

challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*").[10] This sets a high bar, and every other circuit court has followed suit in requiring a showing of causal harm. *See Rodriguez v. Soc. Sec. Admin.*, No. 22-13602, --- F.4th---, 2024 WL 4352403, slip op. at 8-9 (11th Cir. Oct. 1, 2024); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757-58 (10th Cir. 2024), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742-43 (9th Cir. 2022); *Calcutt v. FDIC*, 37 F.4th 293, 318-20 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023).[11] Unsurprisingly

---

[10] An unrelated holding from *CFSA* was subsequently reviewed and reversed by the Supreme Court. *See* 601 U.S. 416 (2024). This Court then formally reinstated the portion of its opinion addressing *Collins*. *See* 104 F.4th 930 (5th Cir. 2024).

[11] Just last week, the Sixth Circuit denied a request for an injunction pending appeal based in part on a challenge to Board member removal protections, holding that the causal-harm requirement applies where a party is seeking to enjoin an administrative proceeding. *See YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at 3-5 (6th Cir. Oct. 13, 2024). Justice Kavanaugh then denied that same challenger's application for writ of injunction. *See YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24A348 (U.S. Oct. 15, 2024) (Kavanaugh, J., in

then, following *Collins* and *CFSA*, this Court has affirmed the dismissal of a complaint for failure to state a claim where plaintiffs failed to allege facts sufficient to establish causal harm. *Collins v. Dep't of Treasury*, 83 F.4th 970, 982-84 (5th Cir. 2023). The law is thus settled: "a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Id.* at 982 (quoting *CFSA*, 51 F.4th at 632).

This settled aspect of removal jurisprudence confirms that Amazon is unlikely to succeed on its claim. Amazon satisfies none of the requirements to show causal harm under *CFSA*. To put a finer point on it, Amazon put forth zero evidence of a desire by the President to remove any of the four sitting Board members (two of whom he appointed and a third he designated as Chairman and recently renominated for another term), much less a desire inhibited by the Board members' removal restrictions. Nor is there any alleged connection between the President's hypothetical failure to remove a

---

chambers),
https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/24a348.html.

Board member (which here is completely counterfactual) and any agency actions challenged by Amazon. Accordingly, *Collins v. Yellen, Collins v. Dep't of Treasury*, and *CFSA* combined instruct that Amazon's removal claim is fit for dismissal, not the award of an extraordinary remedy.[12]

> 2. <u>Amazon is not likely to succeed on the merits of its Seventh Amendment claim (Count II).</u>
>
> > a. The Court does not have jurisdiction over Amazon's Seventh Amendment claim.

Amazon's Seventh Amendment claim rests on the possibility that, should the Board find Amazon unlawfully refused to bargain, the Board may then proceed to overrule longstanding precedent by requiring that Amazon make whole those employees impacted by a failure to bargain. Br. 22-24.[13] This feared hypothetical relief satisfies none of the

---

[12] As we address below at 56-58, *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), does not alter this analysis. That decision addressed solely jurisdiction, not entitlement to injunctive relief.

[13] Amazon casts this remedy as arising out of the Board's recent decision allowing the recovery of direct or foreseeable pecuniary harms in *Thryv, Inc.,* 372 NLRB No. 22 (Dec. 13, 2022), *enf. denied on other grounds,* 102 F.4th 727 (5th Cir. 2024). *See* ROA.27-29. But in reality, the General Counsel seeks a different type of relief in the underlying unfair-labor-practice case that makes employees "whole for the lost opportunity to engage in collective bargaining at the time and manner contemplated by the Act." ROA.138-39; *see also* below at 46-48.

requirements for subverting an exclusive statutory review scheme, such as that contained in the NLRA. In determining whether an exclusive review scheme[14] precludes district court jurisdiction, the Supreme Court has established a three-part inquiry: (1) does "precluding district court jurisdiction . . . foreclose all meaningful judicial review"; (2) is the challenge "wholly collateral" to the agency's normal proceedings; and (3) does the claim fall within "the agency's expertise?" *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 186 (2023).

First, *if* the Board ever orders the remedies about which Amazon complains, that matter will be subject to review in a court of appeals. *See, e.g., NLRB v. USPS*, 477 F.3d 263, 268-71 (5th Cir. 2007) (reviewing NLRB's remedial authority); *NLRB v. Haberman Const. Co.*, 641 F.2d 351, 368-70 (5th Cir. 1981) (en banc) (same); *Tex. Gulf Sulphur Co. v. NLRB*, 463 F.2d 778, 779 (5th Cir. 1972) (per curiam)

---

[14] It is beyond cavil that the NLRA expresses a clear congressional intent to limit district court jurisdiction over NLRB proceedings. *E.g., Bokat v. Tidewater Equip. Co.,* 363 F.2d 667, 673 (5th Cir. 1966) (holding that district courts "have a very very minor role to play in the statutory scheme").

(same).[15] And because Board orders are not self-enforcing, Amazon will not have to pay a penny of make-whole relief unless and until a court of appeals enforces the Board's order over Amazon's statutory and constitutional objections. Accordingly, judicial review in the normal course would be entirely meaningful because Amazon need not "bet the farm" to reach that stage. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) (quoted reference omitted).

Second, determining the appropriate remedies for NLRA violations is not collateral to Board proceedings. To the contrary, it is what the Board does in every meritorious case. And, as the Board has recently shown, it takes constitutional considerations into account when assessing whether a particular remedy ought to be granted. *Thryv, Inc.*, 372 NLRB No. 22, slip op. at 16. Amazon's Seventh Amendment claim thus presents a question of "how [the NLRB's] power [is] wielded," not the "power generally" of the agency. *Axon*, 598 U.S. at 193. To allow Amazon to conjure jurisdiction based on a potential remedy that may be

---

[15] Indeed, as discussed in greater detail below, at 62-64, by filing this effective-denial appeal at such a late date in the administrative process, Amazon could potentially delay the meaningful judicial review which it seeks.

ordered in a particular case eviscerates *any* jurisdictional boundaries for Seventh Amendment claims. Under Amazon's logic (Br. 18, 21, 23), any agency with remedial discretion could be enjoined on Seventh Amendment grounds based on nothing more than speculation that the agency could possibly order legal relief.

And finally, with respect to the third *Axon* factor, the Board's authority to fashion remedies under Section 10(c) has long been recognized as a core area of Board expertise. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941). Amazon's unsupported claim that the Board lacks "both authority and experience" in determining the scope of its remedial authority (Br. 28) runs headlong into decades of contrary precedent. *See, e.g., id.*; cases cited above at 38-39. And should the Board determine that the requested remedies are not warranted (which would accord with extant Board precedent),[16] there would be no need to address the constitutional issue at all. *Elgin v. Dep't of Treasury*, 567

---

[16] *Ex-Cell-O-Corp.,* 185 NLRB 107 (1970), *rev'd sub nom. Int'l Union of United Autoworkers v. NLRB,* 449 F.2d 1046 (D.C. Cir. 1971); *see* Amazon's Opposition to General Counsel's Motion for Summary Judgment, at 10, *Amazon.com Servs. LLC,* No. 29-CA-310869 (Sept. 14, 2023) (noting that "[t]he General Counsel asks the Board to overrule *Ex-Cell-O-Corp.*"), https://apps.nlrb.gov/link/document.aspx/09031d4583b4ed3d.

U.S. 1, 22-23 (2012) (finding jurisdiction lacking where "preliminary questions unique to the employment context may obviate the need to address the constitutional challenge").

> b.  Amazon's Seventh Amendment claim is contrary to controlling law.

As laid out by this Court in *Jarkesy v. SEC*, the Seventh Amendment "analysis [] moves in two stages. First, a court must determine whether an action's claims arise at common law under the Seventh Amendment. Second, if the action involves common law claims, a court must determine whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." 34 F.4th 446, 453 (5th Cir. 2022), *affirmed in rel. part*, ---- U.S. ----, 144 S. Ct. 2117 (2024).

Here, the analysis can proceed in reverse order because the public-rights exception alone suffices to defeat Amazon's Seventh Amendment claim. This Court and the Supreme Court have both affirmed the continuing vitality of this doctrine, holding that Congress can insulate even legal claims from the Seventh Amendment where they involve public rights. To determine whether a claim fails within this exception, the Supreme Court examines whether the statutory claim "borrow[s] its

cause of action from the common law." *SEC v. Jarkesy,* 144 S. Ct. 2117, 2137 (2024); *see Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 43 (1989) (finding right to jury trial based, in part, on fact that fraudulent conveyance actions were brought at law). In *Jarkesy*, this exception was held inapplicable because the securities fraud cause of action was "derive[d] from, and [] interpreted in light of, their common law counterparts." *Jarkesy*, 144 S. Ct. at 2138. In so holding, however, the Court distinguished and endorsed the application of the exception in its prior decision, *NLRB v. Jones & Laughlin Steel Corp.* because NLRA claims are "unknown to the common law." *Id.* (citation omitted).

And, contrary to Amazon's arguments (Br. 25), it is well settled that the NLRA protects public, not private, rights. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940) ("The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights . . . . The Board acts in a public capacity to give effect to the declared public policy of the Act[.]"); *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543 (1943) (claims arising under the NLRA "vindicate public, not private rights"). Accordingly, the public-rights exception applies to claims under the NLRA, and therefore

the Seventh Amendment does not apply. *See YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058, at *12 (E.D. Mich. Sept. 9, 2024), *appeal docketed*, No 24-1754 (6th Cir. Sept. 9, 2024).

In response, Amazon argues that the make-whole remedy sought in this case—*should it ever be awarded*—goes beyond the scope of the Board's "narrowly enumerated statutory relief" and therefore the public-rights exception does not apply. Br. 25. This misapprehends the public-rights exception, which defeats any Seventh Amendment claim *regardless* of the remedy being sought because the exception only comes into play *if* the "claims arise at common law" under this Court's analysis. *Jarkesy,* 34 F.4th at 453. Further, the issue of whether the requested remedy falls within the Board's authority under Section 10(c) of the NLRA is a question of statutory interpretation that can be reviewed in the circuit courts—it matters not one whit for the Seventh Amendment claim. The fact that a Board remedy may result in monetary compensation for private individuals does not defeat the public-rights exception. *See Entergy Miss., Inc. v. NLRB,* 810 F.3d 287, 298-99 (5th Cir. 2015) ("[W]hen the Board brings an enforcement action

under the Act, it acts in the public interest, even when it obtains money damages on behalf of private persons.").

Even assuming the public-rights exception does not apply, Amazon's claim still would fail because NLRA claims do not "arise" under the common law. *Jarkesy*, 34 F.4th at 453. Over eighty years ago, the Supreme Court in *Jones & Laughlin* determined a similar "contention under the Seventh Amendment [to be] without merit." 301 U.S. at 49. This Court reached the exact same conclusion a year earlier in *Agwilines, Inc. v. NLRB*, noting that the "rights and remedies" afforded under the NLRA were not "generally known and enforced at common law by jury trial." 87 F.2d 146, 150 (5th Cir. 1936). Indeed, the NLRA's substantive rights "were not only unknown, they were *obnoxious* to the common law." *Id.* (emphasis added).[17]

---

[17] Amazon now claims, for the first time in this case, that "the NLRB's action [] resembles a traditional tort or contract cause of action," citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 708-09 (1999). That case, however, dealt with a takings claim under 42 U.S.C. § 1983, which the Court correctly found "creates a species of tort liability." *Id.* at 709. Amazon fails to show how this decision overturns or disrupts the NLRA-specific precedent cited above, nor how a takings claim is in any way analogous to the refusal-to-bargain claim Amazon faces in the underlying NLRB proceeding.

Finally, the monetary remedy sought by the General Counsel in the underlying unfair-labor-practice case is not a form of legal relief, so it does not implicate the Seventh Amendment. As the Supreme Court explained in *SEC v. Jarkesy*, "monetary relief can be legal or equitable." 144 S. Ct. at 2129. "What determines whether a monetary remedy is legal is if it designed to punish or deter the wrongdoer, or, on the other hand, solely 'to restore the status quo.'" *Id.* (quoting *Tull v. United States,* 481 U.S. 412, 422 (1987)). The civil penalties sought by the SEC in *Jarkesy* supported the respondents' Seventh Amendment claim there because those penalties were "designed to punish and deter, not to compensate." *Id.* at 2130. Indeed, the penalties had the potential to far exceed any loss to victims and could have been directly pocketed by the agency. *See id.* Accordingly, the Court had no trouble concluding that the SEC's monetary remedy was "a penalty [that] by definition does not restore the status quo and can make no pretense of being equitable." *Id.* (cleaned up).

The make-whole relief sought by the General Counsel in the underlying administrative proceeding is nothing like the "civil penalties" sought in *Jarkesy*. The relief sought by the General Counsel's

complaint is "designed . . . to compensate" employees who have suffered losses due to their employer's unlawful failure to bargain. *Id.* at 2130; ROA.144. It is neither punitive nor deterrent because an employer's culpability does not affect the size of the remedy and because all monetary relief would go to affected employees, not the NLRB or the U.S. Treasury.

Rather than address the actual monetary remedy sought by the General Counsel in this unfair-labor-practice case, Amazon instead fixates on a different remedial doctrine. That doctrine, clarified by the Board in *Thryv,* "standardiz[es] our make-whole relief to expressly include the direct or foreseeable pecuniary harms suffered by affected employees . . . to more fully effectuate the make-whole purposes of the Act." 372 NLRB No. 22, at 7. But even if *Thryv* were relevant here, the merits of Amazon's Seventh Amendment claim would not be improved.

The rationale of *Thryv* rests on the Board's considered judgment that "[w]e cannot fairly say that *employees* have been *made whole* until they are fully compensated for these kinds of pecuniary harms[.]" *Id.* at 9-10 (emphasis added). As with the bargaining remedy sought in this case, *Thryv* remedies are focused entirely on equitable considerations of

restoring the status quo that an unfair labor practice disrupts and ensuring that the victims of unfair labor practices are *made whole*. This is the opposite of the monetary penalties in *Jarkesy*, which are directed at the company, as a wrongdoer, and are designed to *punish* and *deter* future misconduct—remedies that, the Court explained, are available only at law. While "the remedy [was] all but dispositive" in favor of the challenger in *Jarkesy*, 144 S. Ct. at 2129, it is anything but dispositive in favor of Amazon here.[18]

3. Amazon is not likely to establish district court jurisdiction or to prevail on its combined-functions claim (Count III).

Amazon cannot prevail on its convoluted and unsupported combined-functions allegation. First, there are serious questions

---

[18] Amazon misreads *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993), to imply that make-whole relief was unavailable in courts of equity. Br. 22. To the contrary, the Court recognized that "[a]t common law, however, there were many situations—not limited to those involving enforcement of a trust—in which an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond its authority." *Id.* at 256 (cleaned up). Thus, the Court's holding there did not rest upon any notion that make-whole relief was unavailable in equity; instead, the Court found that expanding ERISA's statutory text of "equitable relief" to include all relief available at equity would render certain statutory language "superfluous," contrary to congressional intent. *Id.* at 258

regarding whether the district court has jurisdiction over this claim. Amazon explicitly bases its legal theory "[o]n the facts of this case" (Br. 32), and claims that the Board's authorization of injunctive-relief litigation against Amazon under Section 10(j) of the NLRA "taint[ed] the representation election" at JFK8 and created a "conflict of interest" when the Board declined to review the Regional Director's rejection of Amazon's election objections. Br. 32. This is not the type of claim envisioned by *Axon* alleging that "an agency is wielding authority unconstitutionally in all or a broad swath of [its] work." Even if Amazon's claim were properly characterized as a challenge to the NLRB's 10(j) process generally, Amazon's challenge would still only be directed at a narrow sliver of the Agency's enforcement activities.[19] *Axon*, 598 U.S. at 189. As such, this claim has little in common with the

_____

[19] The Board seeks injunctive relief under Section 10(j) when its usual processes may be rendered ineffective due to the passage of time. *See* 29 U.S.C. § 160(j); 29 C.F.R. § 101.37; *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975). It is quite rare for the Board to institute such proceedings. In fiscal year 2023, out of 19,869 unfair-labor-practice charges filed by the public, the Board granted authorization to file a 10(j) petition only 14 times, resulting in a total of seven petitions actually filed in court. NLRB, *NLRB Performance and Accountability Report, FY 2023*, at 27, 86, https://www.nlrb.gov/sites/default/files/attachments/pages/node-130/nlrb-fy2023-par-508.pdf.

broad-based, combined-functions argument raised in *Axon* itself, which challenged the entire enforcement process of the FTC. *See Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1176 (9th Cir. 2021), *rev'd and remanded*, 598 U.S. 175 (2023).

At its core, Amazon's claim is not a "separation of powers" claim at all, but rather an as-applied challenge to the fairness of the election at JFK8, which the Board has already resolved. But "[n]othing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding . . . especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." *Loma Linda-Inland Consortium for Healthcare Education v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023). Finding jurisdiction over this type of claim would allow parties to get into federal court on any individualized claim alleging agency bias, so long as it is dressed in constitutional garb. This cannot be the case. *See Elgin*, 567 U.S. at 15 (refusing to find jurisdiction based solely on the fact that the plaintiff's claim was "constitutional [in] nature").

Aside from these jurisdictional considerations, this Court has explicitly held that "courts cannot 'presume bias' merely from the institutional structure of an agency." *Illumina*, 88 F.4th at 1047 (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999)). This rationale fully forecloses Amazon's argument, which provides no independent legal basis for holding that the Board acted improperly in processing Amazon's election objections after authorizing a 10(j) action that Amazon claims affected the election. By congressional design, the "institutional structure" of the NLRB empowers the same actors to exercise both of those powers. *See* 29 U.S.C. §§ 153(b), 160(j).

Moreover, none of the cases Amazon cite support its claim. First, *Williams v. Pennsylvania* (Br. 30, 32), was a death-penalty case in which a deeply involved prosecutor later sat as a judge. 579 U.S. 1, 11-14 (2016) (finding that the decision to authorize seeking the death penalty "amounts to significant, personal involvement in a critical trial decision"); *see also Meta Platforms, Inc. v. FTC*, --- F. Supp. 3d ---, No. 23-3562 (RDM), 2024 WL 1121424, at *15 n.4 (D.D.C. Mar. 15, 2024) (distinguishing *Williams* on the ground that it involved a "criminal proceeding[] before a judge, not [an] administrative proceeding[]"),

*injunction pending appeal denied*, No. 24-5054, 2024 WL 1549732 (D.C.

Cir. Mar. 29, 2024). And *Williams* does not undermine circuit courts'

repeated rejection of the claim that the Board cannot decide the merits

of a case in which it previously authorized the institution of 10(j)

litigation. *See, e.g.*, *Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166,

1174 (D.C. Cir. 1998); *Kessel Food Mkts., Inc. v. NLRB*, 868 F.2d 881,

888 (6th Cir. 1989); *NLRB v. Sanford Home for Adults*, 669 F.2d 35, 37

(2d Cir. 1981).[20]

Second, Amazon's reliance on the Arizona Supreme Court's

decision in *Horne v. Polk* (Br. 32), is even further afield. In that case, a

special attorney general had made the final agency decision to affirm

her own order over an administrative law judge's recommendation,

without a board or commission reviewing that decision. 242 Ariz. 226,

228-29 (2017). The Board does not revisit an earlier decision to seek

Section 10(j) relief when it issues final decisions in cases where such

---

[20] Amazon tries to distinguish these cases on the ground that here, its claim of unlawful bias applies to a different case than the one in which the Board authorized 10(j) litigation. Left unexplained is why this creates a heightened, not lessened, risk of bias.

relief was sought; it instead decides the merits of those cases on a full record.

In sum, nothing about Amazon's as-applied combined-functions claim shows any promise of success.

### B. Amazon failed to establish that it will experience any irreparable harm.

The Supreme Court has repeatedly stated that the "basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray,* 415 U.S. 61, 88 (1974). Put another way, "[a] showing of irreparable harm is the *sine qua non* of injunctive relief." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Here, Amazon fails to offer "independent proof" of irreparable harm, let alone establish that such harm is likely to occur. *See White*, above, 862 F.2d at 1211.

Instead, Amazon argues that merely alleging viable constitutional claims obviates the need for an independent showing of harm, citing *Elrod v. Burns,* 427 U.S. 347, 373 (1976) and *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. 1981). Br. 34-35. Those cases, however, involved First Amendment issues and violations

of individual privacy rights, not the more abstract injuries alleged here. *Id.*[21]

Other courts have found that this distinction matters. For example, in *Siegel v. Lepore*, the en banc Eleventh Circuit held: "The only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether." 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc). Similarly, in *Public Service Co. of New Hampshire v. Town of West Newbury*, the First Circuit found that instances where courts have found irreparable harm based solely on a constitutional violation "are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy or other [similar] rights." 835 F.2d 380, 382 (1st

---

[21] The other authorities relied on by Amazon (Br. 34, n.7) are similarly inapt. *See BST Holdings, LLC v. OSHA,* 17 F.4th 604, 618 & n.21 (5th Cir. 2021) (agency rule "threaten[ed] to substantially burden the *liberty* interests of reluctant *individual* recipients put to a choice between their job(s) and their jab(s)" and "the *free religious exercise* of certain employees") (emphasis added); *see also Dennis Melancon, Inc. v. City of New Orleans,* 703 F.3d 262, 279-80 (5th Cir. 2012) (denying request for injunctive relief due to plaintiff's failure to establish irreparable injury).

Cir. 1987). As did the Seventh Circuit in *Wheeler v. Wexford Health Sources, Inc.*, when it held in the face of an alleged deprivation of Eighth Amendment rights that irreparable injury could not be presumed because "equitable relief depends on irreparable harm, even when constitutional rights are at stake." 689 F.3d 680, 682 (7th Cir. 2012). Indeed, any presumption of harm in constitutional cases should be narrow to ensure that each of the four preliminary-injunction factors be given effect. *See Del. State Sportsmen's Ass'n*, 108 F.4th at 202.

And while this Court has not specifically addressed this issue, lower courts within this circuit have found the distinction between individual rights and other constitutional issues to be dispositive. *Sheffield v. Bush,* 604 F. Supp. 3d 586, 609 (S.D. Tex. 2022) ("The court finds that the homeowners' allegation that their constitutional rights have been violated is not enough, taken alone, to establish irreparable injury."); *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101, 120 (W.D. La. 2020) ("[M]erely asserting a constitutional claim is insufficient to trigger a finding of irreparable harm, particularly where the alleged injury involves neither free speech nor invasion of privacy.")

(cleaned up); *Lambert* v. *Bd. of Comm'rs of Orleans Levy Dist.*, Civ. No. 5-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006).

By assailing the notion that it must show any harm, Amazon effectively concedes that it lacks independent evidence of irreparable harm arising from any of its claims. In particular, Amazon launches two unpersuasive attacks that focus entirely on its removability claim. But even these attacks fail.

First, Amazon contends that it need not show that the Board members' removal protections caused harm because *Collins* involved retrospective relief, and here Amazon seeks prospective relief. Br. 36-37. But this Court and others have held precisely the opposite. *CFSA,* 51 F.4th at 631 ("*Collins* did not rest on a distinction between prospective and retrospective relief."); *Calcutt,* 37 F.4th at 316 (explaining *Collins* is not tied to "the nature of remedy" sought by the challenger and applies regardless of "whether the petitioner seeks retrospective or prospective relief"), *quoted in CFSA*, 51 F.4th at 631; *L. Offs. of Crystal Moroney,* 63 F.4th at 180-81 (reaching a similar conclusion); *Leachco, Inc.,* 103 F.4th at 757 (same). This argument is therefore unavailing.

Second, Amazon complains that "the Board has resisted *Axon*'s application to the irreparable harm inquiry." Br. 37. But rightfully so. *Axon* is a jurisdictional decision, full stop. The Supreme Court said as much in *Axon*: "[o]ur task today is not to resolve those challenges, rather, it is to decide where they may be heard." 598 U.S. at 180. Numerous courts, including this one, have since correctly recognized *Axon*'s limits. *See FTC v. U.S. Anesthesia Partners, Inc.*, No. 24-20270, slip op. at 7 (5th Cir. Aug. 15, 2024) (unpublished order dismissing appeal) ("*Axon* is a case about the original jurisdiction of federal courts under 28 U.S.C. § 1331 . . . ."); *Leachco*, 103 F.4th at 759 (describing *Axon* as a case "about jurisdiction"); *accord Kim v. FINRA*, 698 F. Supp. 3d 147, 169 n.19 (D.D.C. 2023).

As the Tenth Circuit persuasively explained in *Leachco,* the "here-and-now injury" language from *Axon*—relied on here by Amazon (Br. 13)—derives from *Seila Law*, in which the Supreme Court considered whether the petitioner had standing to challenge the CFPB's structure. *Leachco*, 103 F.4th at 759 (citing *Seila Law*, 591 U.S. at 212). But a "here-and-now injury" sufficient to confer standing is not necessarily sufficient to establish an entitlement to injunctive relief. The Supreme

Court recognized as much in *Collins*: "What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Collins*, 594 U.S. at 258 n.24. Amazon falls prey to the very misunderstanding *Collins* warned against.

Accordingly, both the Sixth and Tenth Circuits have rejected the argument that *Axon* abrogates *Collins* as to actions seeking to stop scheduled or ongoing agency proceedings. *YAPP*, 2024 WL 4489598, at *3; *Leachco,* 103 F.4th at 750, 757-59. Recent contrary district court decisions—all of which are now on appeal—do not hew to these principles or this Court's precedent. *See Space Expl. Techs. Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024), *appeal docketed*, No. 24-50627 (5th Cir. Aug. 1, 2024); *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024), *appeal docketed*, No. 24-40533 (5th Cir. Aug. 16, 2024); *Aunt Bertha v. NLRB,* No. 24-cv-00798, 2024 WL 4202383, at *2-3 (N.D. Tex. Sept. 16, 2024) (same), *appeal docketed*, No.

24-10855 (5th Cir. Sept. 19, 2024).[22] This Court should not accept Amazon's invitation to create a circuit split by recasting a standing-based analysis into a license to dispense with an irreparable-harm inquiry whenever a removal-restrictions challenger seeks injunctive relief.

Amazon also argues that absent an injunction it "will be unable to effectively obtain relief from being deprived of a jury." Br. 35. But Amazon is wrong because where courts have found that a right to jury trial was improperly denied, the reviewing court simply orders a new trial. *See, e.g., Tull v. United States*, 481 U.S. 412, 415, 427 (1987) (remanding after bench trial upon finding Seventh Amendment violation); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 37, 64-65 (1989) (same); *Solis v. Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552-53 (1990) (observing that "in cases involving a wrongful denial of a petitioner's right to a jury trial on legal issues," the Court "ha[s] reversed and remanded each case in its entirety for a trial before a jury," and ultimately "requir[ing] a new trial in this case"). And even if

---

[22] This Court recently consolidated the appeals in the three NLRB cases.

this Court accepted Amazon's claim of irreparable harm due to the lack of a jury trial, Amazon would not be entitled to a broad injunction stopping the Board in its tracks. Rather, the most Amazon could get— assuming the other injunctive-relief criteria were satisfied—is a limited injunction prohibiting the Board only from ordering those remedies that must be awarded by a jury.

Finally, Amazon argues that without an injunction "it will be too late to provide effective relief" on its "due process claim" once the Board "issues a final decision on Amazon's Objections." Br. 35-36. But this argument is disconnected from the operative facts. The Board conclusively disposed of Amazon's election objections by denying Amazon's request for review in August (ROA.20). By rule, Amazon is precluded from relitigating those objections in the technical 8(a)(5) case that is the focus of its preliminary-injunction request. *See* 29 C.F.R. § 102.67(g). Thus, the conduct Amazon challenges is over, and accordingly, beyond the reach of a preliminary injunction.

C. *The balance of the equities and the public interest factors counsel against granting a preliminary injunction.*

Amazon cannot show that its alleged harm outweighs the vast harm that an injunction of the NLRB's processes would inflict on the

public, the parties involved in this proceeding, and those not before the Court. This explains Amazon's attempt to sidestep equity balancing and ascertaining the public interest by arguing those requirements are met merely because Amazon forecasts the success of its own constitutional claims. Br. 39-40. But, as Judge Bibas persuasively explained in a recent Third Circuit decision, this kind of argument impermissibly "collapses the four factors" of the injunction framework into one. *Del. State Sportsmens' Ass'n*, 108 F.4th at 202-04. Amazon's interest in obtaining an injunction, properly considered as a distinct factor, is eclipsed by the continued ability of the NLRB to vindicate the core workplace rights enshrined in the NLRA.

Long ago, the Supreme Court recognized that employees' right under the NLRA choose whether or not "to bargain collectively through representatives of their own choosing" is a "fundamental right." *Jones & Laughlin*, 301 U.S. at 33. Effectuating that fundamental right is at the center of the administrative proceeding that Amazon seeks to enjoin, even though ALU won by over 500 votes. The harmful effect of halting the enforcement of duly enacted laws, especially those protecting fundamental rights, is particularly acute here, as discussed below.

First, the NLRA was enacted in 1935 to help pull the country out of the Great Depression, and immediately withstood forceful attacks on its constitutionality, not unlike those brought by Amazon here. *See id.* at 49 (rejecting employer's Seventh Amendment challenge to the NLRA); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938). And unlike many other federal statutes, the NLRB is the only forum for effectuating these fundamental rights, as there is no private right of enforcement. *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.,* 309 U.S. 261, 265-66 (1940). Thus, contrary to Amazon's assertion that nothing would be lost if this Court enjoined agency proceedings (Br. 39-40), parties would be left with no way to protect their fundamental rights under the NLRA. This cannot serve the public interest, particularly when Amazon can obtain an adequate remedy in a court of appeals immediately after the Board issues a final decision in the case that Amazon seeks to enjoin.

Second, while any injunction here would be limited solely to the parties to this case, the constitutional claims being brought are present in virtually every other Board proceeding. This has not gone unnoticed by parties, who seek to enjoin NLRB proceedings on these speculative

and meritless constitutional claims in growing numbers. Simply put, granting an injunction here gravely interferes with the enforcement of the NLRA, a law "enacted by representatives of [the] people," and therefore constitutes a "form of irreparable injury" to the public. *See, e.g.*, *Tex. All. for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020).

Finally, the immense public interest and equitable considerations disfavoring an injunction here are brought into sharp focus by examining the specific circumstances of this case. The Board has found that JFK8 employees freely chose to select the TANNC as their representative in 2022, yet their choice has not yet been effectuated because of Amazon's conduct. Although Amazon is certainly entitled to challenge TANNC's status through appropriate channels, its latest gambit in filing this suit only serves to introduce more unwarranted delay. Courts have long recognized that delays in initial contract bargaining cause irreparable harm to employees and the certified union. *E.g.*, *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 49-50 (1987) (employer's refusal to bargain "disrupts the employees' morale, deters their organizational activities, and discourages membership in unions") (quoting *Franks Bros. Co. v. NLRB,* 321 U.S.

702, 704 (1944)). The Board has adopted expedited procedures for technical 8(a)(5) cases testing initial certifications to ameliorate the impact of this delay. NLRB Casehandling Manual, Part 1, § 10282.2 (instructing Regions to file Motion for Summary judgment "within 7 days after respondent files its answer in a technical 8(a)(5) case"). Any further delay arising from this lawsuit would clearly be contrary to the public's interest in effective enforcement of labor law.

By contrast, Amazon's interest in obtaining an injunction at this late stage of the administrative proceedings is slight, and the equities cut sharply against it. For reasons that remain unexplained, Amazon waited until *nearly three years* after TANNC's filing of the initial representation petition to bring these claims against the Board. During this time, Amazon has proceeded through an NLRB representation election involving thousands of employees, a post-election objections hearing lasting dozens of days, and hundreds of pages of briefing (if not more). Throughout all these proceedings, the constitutional claims that it now brings were present and available for Amazon to raise.[23] Yet only

---

[23] Indeed, many months ago and in response to separate unfair-labor-practice charges, Amazon raised these same constitutional challenges

*now* does Amazon raise them, along with a claimed need for emergency relief from this Court, notwithstanding that the only thing left standing between Amazon and an Article III court of appeals would be the issuance of a "technical" decision by the Board on the General Counsel's Motion for Summary Judgment—a decision which Amazon says it expects in the "imminent future." ROA.22.

This Circuit has denied injunctions due to dilatory filings in circumstances far graver than those present here. *E.g.*, *Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006) (denying request for stay of execution by inmate on death row based solely on "dilatory filing," without assessing merits of claims); *see also Benisek v. Lamone*, 585 U.S. 155, 160 (2018) (per curiam). In short, Amazon's inexplicable delay, standing alone, serves as a strong (perhaps dispositive) factor in denying the requested equitable relief.

---

administratively. Amazon.com Services LLC's Answer to the Second Amended Consolidated Complaint 15-16, *Amazon.com Servs., LLC,* No. 29-CA-296817, *et al.*, (NLRB Feb. 15, 2024), *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583c76c4a.

## CONCLUSION

For the reasons stated above, this appeal should be dismissed, and the case remanded for appropriate proceedings.

Respectfully submitted,

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
CHRISTINE FLACK
  *Supervisory Attorney*
MICHAEL DALE
  *Supervisory Attorney*
KENT COUPE
  *Honors Attorney*

/s/ Tyler Wiese
TYLER J. WIESE
  *Senior Trial Attorney*

National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570
Tel: (952) 703-2891
Fax: (202) 273-4244
tyler.wiese@nlrb.gov

Dated: October 17, 2024
       Washington, DC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellees' Brief was filed electronically with this Court's CM/ECF system on this date, which will send an electronic notice to all registered parties and counsel.

/s/ Tyler Wiese
_____
TYLER J. WIESE
   *Senior Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, DC 20570
Tel: (952) 703-2891
tyler.wiese@nlrb.gov

Dated: October 17, 2024
      Washington, DC

# CERTIFICATE OF COMPLIANCE

The National Labor Relations Board certifies that this document complies with the typeface, type-style, and length requirements in Fifth Circuit Rule 32.1 and Federal Rules of Appellate Procedure 32(a)(5)-(7), because it contains 12,905 words, excluding those exempted by Federal Rule of Appellate Procedure 32(f), which are proportionally-spaced, 14-point Century Schoolbook font, and the word-processing software used was Microsoft Word for Office 365.

/s/ Tyler Wiese
_____

TYLER J. WIESE
   *Senior Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, DC 20570
Tel: (952) 703-2891
tyler.wiese@nlrb.gov

Dated: October 17, 2024
     Washington, DC