# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2025

Lyle W. Cayce
Clerk

————————

No. 24-50761

————————

AMAZON.COM SERVICES LLC,

*Plaintiff—Appellant,*

*versus*

NATIONAL LABOR RELATIONS BOARD, A FEDERAL
ADMINISTRATIVE AGENCY; JENNIFER ABRUZZO, *In her official
capacity as the General Counsel of the National Labor Relations Board*;
MARVIN KAPLAN, *Chairman, National Labor Relations Board, In his
official capacity as the Chairman of the National Labor Relations Board*;
MARVIN E. KAPLAN, *In their official capacities as Board Members of the
National Labor Relations Board*; GWYNNE A. WILCOX, *In their official
capacities as Board Members of the National Labor Relations Board*; DAVID
M. PROUTY, *In their official capacities as Board Members of the National
Labor Relations Board*,

*Defendants—Appellees,*

TEAMSTERS AMAZON NATIONAL NEGOTIATING COMMITTEE,

*Intervenor.*

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:24-CV-1000

————————————————————

No. 24-50761

Before Richman, Graves, and Ramirez, *Circuit Judges*.

Irma Carrillo Ramirez, *Circuit Judge*:

Amazon appeals the "constructive denial" of its motion for injunctive relief from "being subjected to [two] unconstitutional administrative proceedings" before the National Labor Relations Board ("NLRB"). We DISMISS this appeal for lack of subject-matter jurisdiction.

I

Amazon is a major online retailer that receives, sorts, and ships products from warehouses called "fulfillment centers." In December 2021, the Amazon Labor Union ("ALU") filed a petition with the NLRB to represent more than 8,000 Amazon employees at the fulfillment center in Staten Island, New York. The election was held on April 1, 2022, and a majority of the employees voted in favor of ALU. The election resulted in two separate NLRB proceedings concerning the NLRB's alleged interference with the union election, Case 29-RC-288020 (the "Election Case"), and Amazon's alleged refusal to bargain with the union, Case 29-CA-318069 (the "Bargaining Case").

A

On April 8, 2022, Amazon initiated the Election Case by filing 25 objections, alleging that ALU and the Regional Office had interfered with the conditions for a free and fair election. On March 31, 2022, the day before the election, the NLRB's Regional Director—with approval from the General Counsel—sought an injunction ordering the immediate reinstatement of an employee that Amazon had terminated almost two years earlier. That employee had filed a charge against Amazon in June 2020, and the NLRB's Regional Office had issued a complaint against Amazon in December 2020. Amazon claimed that the General Counsel should have sought an injunction as soon as the Regional Office issued its complaint in December 2020, rather

than waiting until the eve of the union election. This "undermined the integrity of the April 2022 election that the [NLRB] was obliged to supervise neutrally." Amazon sought to have the NLRB invalidate the election results and order a second election.

Amazon sought to transfer the case to a different, non-conflicted region, and the General Counsel transferred the matter to Region 28, which serves parts of Texas. On September 1, 2022, after a 24-day hearing, the Region 28 Hearing Officer recommended that all of Amazon's objections be overruled. On January 11, 2023, the Region 28 Regional Director affirmed the Hearing Officer's recommendation and certified ALU as the bargaining representative for Amazon's Staten Island fulfillment center. On February 9, 2023, Amazon requested review of the decision, which the NLRB denied on August 29, 2024.

## B

Meanwhile, because of the election, ALU demanded that Amazon recognize and bargain with it. It filed a charge with the Regional Office, alleging that Amazon refused to recognize it or bargain with it as the exclusive representative for the Staten Island employees. On July 12, 2023, the Regional Director issued a complaint, which initiated the Bargaining Case.

On August 23, 2023, the General Counsel moved for summary judgment on the complaint, alleging that Amazon violated the National Labor Relations Act by refusing to bargain with ALU until its objections were adjudicated. The General Counsel also sought an order directing Amazon to recognize and bargain with ALU, pay consequential damages as a "make-whole" remedy for certain Amazon employees, and transfer the Bargaining Case from the Regional Office to the NLRB itself.

Later that day, the NLRB granted the motion to transfer and issued a notice to show cause as to why the summary judgment motion should not be

granted. On August 25, 2024, the day after the NLRB denied Amazon's request for review in the Election Case, the NLRB issued an updated notice to show cause in the Bargaining Case. The updated notice instructed Amazon to file any supplemental opposition to the summary judgment motion on or before September 13, 2024. The NLRB later extended the deadline to September 27, 2024.

## C

On September 5, 2024, Amazon sued the NLRB in the Western District of Texas, requesting temporary, preliminary, and permanent declaratory and injunctive relief. It sought:

> [T]o avoid serious and irreparable harm that it will otherwise suffer from being subjected to unconstitutional administrative proceedings. Because the structure of the proceedings in NLRB Cases 29-CA-310869 and 29-RC-288020 violate the United States Constitution under Supreme Court and Fifth Circuit precedent, Amazon respectfully brings this action for declaratory and injunctive relief . . . .

Amazon also requested that the district court "set a hearing for a preliminary injunction [and] issue a preliminary injunction" but did not request that this hearing—or the requested relief—occur before a specific date.

After it filed suit, Amazon asked the NLRB to administratively stay the Bargaining Case proceeding, but the NLRB refused. On September 9, 2024, the district court informed Amazon that a local rule required that its application for a preliminary injunction must be made in a separate motion. Accordingly, on September 10, 2024, Amazon moved for a temporary restraining order and preliminary injunction. Amazon argued that it faced imminent and irreparable harm because, if the administrative proceedings went forward, "Amazon will lose its right not to undergo an unconstitutional proceeding." Judicial review of its constitutional claims "would thus come

too late to be meaningful." *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 202 (2023). Amazon informed the district court that the original deadline to file its supplemental opposition was September 13, but again, it did not request expedited relief from the district court. That same day, the NLRB moved to transfer the case to the Eastern District of New York.

The district court held a hearing on the motions to transfer and for temporary restraining order on September 24, 2024. At the hearing, Amazon acknowledged both that it had not filed its response in the Bargaining Case and that the NLRB "normally [takes] weeks" to issue a decision. It expressed its concern that "a ruling could issue as soon as we file a brief" because of the "relationship between [Amazon] and the NLRB." Amazon also told the district court that "if the [Bargaining Case proceeding] goes forward after this Friday and [the NLRB] issues an order granting the summary judgment, then the constitutional issues . . . are mooted." The NLRB, in turn, represented that "a period of months, generally, is about as quick as the board can act given its caseload." Amazon did not request an expedited ruling or a ruling by its submission deadline, September 27. The district court requested supplemental briefing by September 27 and took both motions under advisement.

On September 26, 2024, Amazon filed a letter brief with the district court "ahead of the 12:00 p.m. Central, September 27, 2024, deadline" to file its supplemental opposition to the summary judgment motion pending before the NLRB. In the district court, it re-urged its motion for injunctive relief and stated that it would be seeking emergency appellate relief unless the district court granted a temporary restraining order before its submission deadline, alleging that it would be "forced" to do so "given the imminence of a Board ruling in the underlying administrative proceeding." In response, the NLRB argued that Amazon had not established any of the necessary elements for an emergency temporary restraining order. The next day,

No. 24-50761

Amazon noticed the appeal of the district court's "constructive denial" of its motion for temporary restraining order and preliminary injunction.

While the current appeal was pending before this court, on September 29, 2024, the district court granted—but stayed—the NLRB's motion to transfer.[1] It also denied Amazon's request for a temporary restraining order. The district court explained that "Amazon has failed to establish a substantial threat of irreparable harm if an injunction is not granted." Instead, "it predicates its claim based on a claim that the NLRB may depart from precedent and require it to provide some form of compensation to employees for their lost opportunity to engage in collective bargaining." "This is both speculative and unripe," the district court found.

On September 30, 2024, a motions panel of this court administratively stayed the proceedings before the district court and the NLRB and expedited the matter to the next available merits panel.

## II

At issue is whether the district court constructively denied Amazon's motion for a temporary restraining order and preliminary injunction.

Under § 1292(a)(1), this court has jurisdiction to review interlocutory orders, including orders that refuse or dissolve injunctions. 28 U.S.C. § 1292(a)(1). This also includes orders that do not expressly refuse an injunction but have the "practical effect of doing so." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981) (citing *Gen. Elec. Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 433 (1932)).

---

[1] In its opening brief, Amazon contends that "[t]he district court lacked jurisdiction to enter the order, and it has no effect on the appeal before the Court."

No. 24-50761

III

Amazon argues that the district court constructively denied its motion for a preliminary injunction by failing to rule on or before September 27, 2024; as a result, it faced an injury that could not be undone—the NLRB "consummating a final order in its unconstitutional proceeding." We disagree.

"[W]hat counts as an effective denial is contextual—different cases require rulings on different timetables." *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 535 (5th Cir. 2024). "District courts have wide discretion in managing their docket, and they do not necessarily deny a motion by failing to rule on a parties' requested timeline." *Id.* "Appeal cannot be achieved simply by asserting that the trial court has failed to act promptly as wished by a party seeking an injunction." *Id.* "There must be a legitimate basis for [any] urgency." *Id.* (citing 16 CHARLES ALLEN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 3924.1 (3d ed.)). Another consideration is the litigant's "diligence in seeking to expedite briefing and consideration," such as whether it has made "repeated requests for a ruling by a specific date." *Id.*

In *Fort Worth Chamber of Commerce*, a group of business associations sued the Consumer Financial Protection Bureau, challenging a new rule that required them to print and distribute materials about credit card late fees to customers and provide notice of mitigating changes by March 29, 2024. 100 F.4th at 531. On March 7, the associations moved to enjoin the rule and specifically requested an expedited ruling "within 10 days, or as soon as possible thereafter, to prevent irrecoverable harm." *Id.* at 531–32. The district court did not rule within 10 days and instead *sua sponte* requested briefing on venue on March 18. *Id.* The next day, the associations again specifically requested an expedited ruling and informed the court that they

would understand the preliminary injunction to have effectively been denied if it had not ruled by March 22. *Id.* Without ruling on the motion, the district court transferred the case to the District of Columbia on March 28. *Id.* We held that the district court had effectively denied the motion for preliminary injunction because the associations demonstrated a legitimate basis for the urgency, i.e., "the unusually short timeline for complying with the rule." *Id.* at 535. They had also "repeatedly requested swift review," including "repeated requests for a ruling by specific dates." *Id.* at 534.

## A

We first consider Amazon's diligence in seeking expedited briefing and consideration. *Id.* at 535.

Here, Amazon did not "[make it] clear from its first filing [on September 5, 2024] that the [final order] was going into effect on an unusually short timeline." 100 F.4th at 534. It instead "made clear" that the deadline to respond to the NLRB's summary judgment motion was September 13—and then later September 27—and that a final order could be anticipated at some point after that deadline. Amazon even acknowledged that the NLRB "normally [takes] weeks" to issue a decision.

Moreover, unlike the business associations in *Fort Worth Chamber of Commerce*, Amazon did not "repeatedly request[] swift review." 100 F.4th at 534. Amazon "specifically requested a ruling" just once, approximately 24 hours before the September 27 deadline, despite several prior opportunities. *See id.* Amazon never made a specific request for an expedited briefing schedule, an expedited hearing, or an expedited ruling in its filings. Amazon emphasized in the hearing that it faced imminent and irreparable harm if the NLRB issued an order granting summary judgment. But despite telling the court that "a ruling could issue as soon as we file a brief," Amazon never

made a specific request during the hearing for an expedited ruling—or even just a ruling—by September 27.

Indeed, Amazon failed to make this request even when specifically asked for input about next steps and timing. Towards the end of the hearing, the district judge expressed concern that, if he granted the motion to transfer, Amazon could appeal his order, and "then we [would] just be back here with more delay." He point-blank asked, "[s]o what do I do here, Amazon?" Despite this prompting, Amazon still made no specific request for a ruling by September 27.[2] Moreover, before concluding the hearing, the district judge said that he would allow the parties to file supplemental briefs by September 27. Even when presented with a supplemental briefing deadline that fell on the date it purportedly needed a decision by, Amazon again failed to inform the district court of its needs. Amazon did not object or otherwise state the importance of an expedited decision; instead, it asked the district court whether it wanted the briefing "by a particular time." Amazon did not request relief by a specific date—or even expedited relief—until its letter brief dated September 26, in which it requested for the first time that the district court rule on or before September 27. During oral argument, Amazon was also unable to identify any other specific request for a ruling by this date. Amazon has not shown that it acted diligently.

_____

[2] In response to the district court's question, counsel stated:

So, I guess a few options. One would be to grant the TRO to give yourself, Your Honor, time to write and issue an order. But I think if you're saying your inclination is to transfer venue, which would result in you staying the case for an appeal, I think a TRO or preliminary injunction does need to be granted to, again, stop the NLRB from issuing an order in the underlying case. Because if it goes forward after this Friday and issues an order granting the summary judgment, then the constitutional issues again are mooted.

No. 24-50761

B

Amazon also failed to establish a legitimate basis for the alleged urgency. *See Fort Worth Chamber of Commerce*, 100 F.4th at 535. September 27 was Amazon's deadline to file its response to the summary judgment motion in the Bargaining Case. Nothing indicated that the NLRB would—or even could—issue a decision that same day. Amazon acknowledged at the preliminary injunction hearing that it normally takes weeks for decisions to issue; the NLRB stated that "a period of months, generally, is about as quick as [it] can act given its caseload."

Finally, this court has also considered the district court's timeliness in assessing urgency. *Fort Worth Chamber of Commerce*, 100 F.4th at 535 ("[G]iven the issuers' unusually short timeline for complying with the Final Rule or obtaining injunctive relief, the district court effectively denied the Chambers' motion for a preliminary injunction *by not promptly ruling on it* and instead opting to hear an unrelated motion *sua sponte*." *Id.* (emphasis added)). *See, e.g., United States v. Lynd*, 301 F.2d 818, 823 (5th Cir. 1962) (finding effective denial where the district court conducted a merits hearing on the injunction motion and the movant "proved without question" its entitlement to relief, but the district court unduly delayed ruling on that motion). Here, the district court issued its decision *one business day* after supplemental briefing was complete, but by that point, Amazon had already petitioned this court for relief.

A litigant cannot "simply say they need an expedited ruling and then appeal by claiming effective denial when they do not get it on their preferred timeline." *Fort Worth Chamber of Commerce*, 100 F.4th at 535. Amazon neither diligently requested consideration by September 27 nor demonstrated a legitimate basis for the urgency. The district court did not effectively deny the motion for injunctive relief in failing to rule on or before

No. 24-50761

September 27. Because there is no effective denial, there is no interlocutory decision before this court under 28 U.S.C. § 1291(a)(1). This appeal must be dismissed for lack of subject-matter jurisdiction.

IV

Amazon's appeal is DISMISSED for lack of subject-matter jurisdiction under 28 U.S.C. § 1291(a)(1).

No. 24-50761

Priscilla Richman, *Circuit Judge*, dissenting:

I would hold that the district court effectively denied Amazon's motion for a preliminary injunction, giving rise to our interlocutory appellate jurisdiction. Because the court concludes otherwise, I respectfully dissent.

## I

Under 28 U.S.C. § 1292(a)(1), we have jurisdiction over appeals from interlocutory orders denying injunctive relief.[1] Litigants may also, in certain circumstances, appeal an otherwise unappealable interlocutory order that does "not in terms 'refus[e]' an 'injunctio[n],'" but nonetheless has "the practical effect of doing so."[2] We have also "recognized that simply sitting on a preliminary-injunction motion for too long can effectively deny it."[3] In constructive-denial cases, we require a showing that the practical or effective denial "threatens 'serious, perhaps irreparable[,] consequences' and can be effectively challenged only by immediate appeal."[4] This showing serves as "a safeguard against undue widening of the floodgates which currently keep

---

[1] 28 U.S.C. § 1292(a)(1).

[2] *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981) (alteration in original) (quoting *Gen. Elec. Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 433 (1932)); *see also Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.*, 756 F.3d 380, 384 (5th Cir. 2014); *Sherri A.D. v. Kirby*, 975 F.2d 193, 203-04 (5th Cir. 1992); *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 169-70 (5th Cir. Unit B Aug. 1981) (collecting cases). *See generally* 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (Wright & Miller) § 3924.1 (3d ed. 2025)).

[3] *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 533 (5th Cir. 2024); *see also Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 635 (5th Cir. 2023); *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 318 F.2d 63, 64 (5th Cir. 1963); *NAACP v. Thompson*, 321 F.2d 199, 202 (5th Cir. 1963) (citing *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962)). *See generally* 16 Wright & Miller § 3924.1 (3d ed. 2025).

[4] *Sherri A.D.*, 975 F.2d at 203 (quoting *Carson*, 450 U.S. at 84).

No. 24-50761

in proper bounds" our § 1292(a)(1) jurisdiction.[5]  Amazon asserts that the district court's *inaction* effectively denied its motion.

## II

We recently discussed how to "determine whether the district court's inaction . . . amounts to an 'effective' denial" in *In re Fort Worth Chamber of Commerce*.[6]  There, the plaintiff filed suit challenging a new administrative rule two days after the agency finalized the rule.[7]  The new rule required the plaintiff to take steps toward compliance twenty-two days later.[8]  The plaintiff immediately moved for a preliminary injunction, expressly requesting a ruling within ten days.[9]  The district court did not rule within ten days; instead, on the eleventh day, the court "sua sponte requested briefing on venue."[10]  On the twelfth day, the plaintiff moved for expedited review of its preliminary injunction motion and informed the court that if "it did not receive a ruling by [the fifteenth day], it would understand its preliminary injunction to be effectively denied and would accordingly seek appellate review."[11]  The district court did not rule by the fifteenth day.[12]  On

---

[5] *Id.*; *see also Shanks v. City of Dallas*, 752 F.2d 1092, 1096 (5th Cir. 1985) ("The need to show such consequences is the result of the balance struck by Congress in § 1292(a)(1) between the interests of the judiciary in limiting expensive and wasteful piecemeal appeals and the interests of the litigant in avoiding the immediate impact of interlocutory orders.").

[6] 100 F.4th 528, 533 (5th Cir. 2024).

[7] *Id.* at 532.

[8] *Id.*

[9] *Id.*

[10] *Id.* (italics omitted).

[11] *Id.*

[12] *Id.*

the eighteenth day—four days before the date for compliance—the plaintiff appealed.[13]

We concluded that the district court had effectively denied the plaintiff's motion for a preliminary injunction such that we had interlocutory appellate jurisdiction. We reasoned that "a motion for preliminary injunctive relief 'must be granted *promptly* to be effective.'"[14] Accordingly, "[a]mong the considerations when determining whether a district court has waited too long to rule on a motion is 'the urgency of preliminary relief as a means of preserving the opportunity for *effective* permanent relief.'"[15] In this vein, "[t]here must be a legitimate basis for the urgency."[16] "Thus, whether a district court fails to act promptly depends entirely on context."[17] We also emphasized that "[f]or its part," the moving party "acted diligently."[18]

In *Fort Worth*, the plaintiff had a legitimate basis for urgency because "the Final Rule's fast-closing window for compliance demanded faster review of the motion for a preliminary injunction."[19] The plaintiff acted diligently by filing suit within two days after the agency finalized the rule; by "ma[king] clear from its first filing that . . . [it] had an unusually short

---

[13] *Id.*

[14] *Id.* at 533 (quoting 16 WRIGHT & MILLER § 3924.1 (3d ed. 2025)); *cf. Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. . . . [H]aste . . . is often necessary if those positions are to be preserved . . . .").

[15] *Fort Worth*, 100 F.4th at 534 (quoting 16 WRIGHT & MILLER § 3924.1 (3d ed. 2025)).

[16] *Id.* at 535.

[17] *Id.* at 534.

[18] *Id.*

[19] *Id.* at 535.

window of time to comply" with the new rule; by specifically requesting a ruling on its preliminary injunction motion within ten days; by making "repeated requests for a ruling by specific dates"; and by requesting expedited briefing.[20] Yet the district court failed to rule on the preliminary injunction motion, but instead "g[a]ve its attention to" the venue issue.[21] This amounted to an effective denial of the motion for a preliminary injunction.

## III

These principles support appellate jurisdiction here. While some of the operative facts differ in degree, "what counts as an effective denial is contextual."[22]

## A

Amazon had a legitimate basis for urgency in seeking preliminary injunctive relief against the Bargaining Case. Impending summary judgment in the Bargaining Case could moot Amazon's district court claims, precluding the district court's ability to grant *any* relief. I am persuaded that this would be "a 'serious, perhaps irreparable, consequence'" that "can be 'effectually challenged' only by immediate appeal" from the district court's effective denial of Amazon's motion.[23]

Amazon's constitutional objections to the Bargaining Case all allege ongoing subjection to an illegitimate decisionmaker. While "[t]hat harm may

---

[20] *Id.* at 534.

[21] *Id.*

[22] *Id.* at 535.

[23] *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (quoting *Balt. Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)).

sound a bit abstract," the Supreme Court "has made clear that it is 'a here-and-now injury'" that district courts have jurisdiction to redress prior to the termination of an agency proceeding.[24] This injury is conceptually distinct from an injury arising from an adverse agency order, which a party might challenge—also on constitutional grounds—after the proceeding.[25] Importantly, the here-and-now injury "is impossible to remedy once the proceeding is over" because "[a] proceeding that has already happened cannot be undone."[26]

Amazon and the NLRB agree that the Board could grant summary judgment against Amazon after the September 27 show-cause deadline, including on that same day,[27] and the NLRB acknowledged in oral arguments that "the administrative proceeding would likely have concluded at that point had the Board addressed all issues in the case."[28] In that event, the "proceeding is over," and it "cannot be undone."[29] Post hoc "[j]udicial review of [Amazon's] structural constitutional claims"—framed as *ongoing* subjection to an illegitimate decisionmaker—"would come too late to be meaningful,"[30] and the district court would be unable to provide the relief

---

[24] *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (quoting *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 212 (2020)).

[25] *See id.*

[26] *Id.*

[27] *See* Amazon Br. at 3-4; NLRB Br. at 19; *see also* ROA.558-59 (NLRB counsel not contesting that the Board could issue a decision any time after show-cause deadline); Oral Argument at 21:13-58 (NLRB counsel contemplating effects if the Board had ruled on same day as show-cause deadline).

[28] Oral Argument at 21:42-58.

[29] *Axon*, 598 U.S. at 191.

[30] *Id.*

No. 24-50761

Amazon requested in its complaint. That is exactly why "preliminary relief [functions] as a means of preserving the opportunity for *effective* permanent relief."[31] Just as in *Fort Worth* a "fast-closing window for compliance demanded faster review of the motion for a preliminary injunction," a fast-closing window before potential summary judgment in the Bargaining Case demanded faster review here.[32]

The majority opinion concludes that there was no legitimate basis for Amazon's urgency because there was no indication that the Board would issue a decision on the same day as the show-cause deadline.[33] To be sure, the parties dispute how quickly the Board would likely act after the show-cause deadline, and there is admittedly no guarantee that the Board would grant summary judgment against Amazon, thus ending the proceedings. But the prospect that the Board *could* issue an adverse decision any time after the show-cause deadline, as the parties agree was possible, presented a legitimate basis for urgency. In reaching the opposite conclusion, the majority opinion states that "Amazon acknowledged at the preliminary injunction hearing that it normally takes weeks for decisions to issue."[34] In context, however, Amazon's "acknowledgement" is far from any concession. The district court asked, "[H]ow fast do you think the Board is going to issue a decision?" Amazon responded:

> This would certainly be a guess, although an educated one; but, typically, in test of certification proceedings the rulings come out fairly quickly, much quicker than in the normal course.

---

[31] *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 534 (5th Cir. 2024) (quoting 16 WRIGHT & MILLER § 3924.1 (3d ed. 2025)).

[32] *Id.* at 535.

[33] *Ante* at 10-11.

[34] *Ante* at 10.

No. 24-50761

> [The court then stated: "Give me timeframes."]  Normally weeks, but given the posture of this case and sort of the nature of the—what I'll call the relationship between our client and the NLRB, we believe that a ruling could issue as soon as we file a brief.[35]

Even if Amazon acknowledged that it "normally" takes weeks for decisions to issue, Amazon argued that the NLRB would likely act faster than usual in its case.  Further, we cannot consider the fact that the Board has yet to render a decision because a motions panel of this court administratively stayed the Bargaining Case on September 30, preventing the Board from acting.

Similarly, although the district judge stated during the September 24 motions hearing that he intended "to try to get this [ruling on the motions] out as soon as I can," Amazon could not know how long the court would take, or if the Board would grant summary judgment before the court could act.  Even though we now know that the district court issued a ruling on Amazon's request for a temporary restraining order (TRO) two days after Amazon noticed its appeal, we must consider the context as it existed on September 27—the date on which Amazon had to file its response at the NLRB, thus making ripe the General Counsel's motion for summary judgment—not September 29.  On September 27, neither the district court nor Amazon could know how long the Board would wait to issue a decision in the Bargaining Case—two days, two weeks, two months, or longer.  Accordingly, I give little weight to the fact that the district court ruled on the motion two days later.[36]

Importantly, I do not see—and the majority opinion has not offered—any principled way for us to determine whether the district court failed to

---

[35] ROA.558-59.

[36] *Contra ante* at 10.

No. 24-50761

"timely rule on [Amazon's] preliminary-injunction motion"[37] other than by tethering that inquiry to the show-cause deadline. Assume Amazon had not noticed its appeal on September 27 and assume the district court did not eventually act on September 29. How long after the show-cause deadline would have been too long of a delay by the district court? At what point could Amazon have invoked our interlocutory appellate jurisdiction on an effective-denial theory? After the show-cause deadline arrived, no one could know, other than the NLRB, when the Board intended to issue a decision that could moot Amazon's district court claims. What was certain was that the Board *could* issue a ruling after the show-cause deadline, at its convenience.

Amazon's basis for urgency was all the more legitimate given that *the Board* had the power to moot Amazon's claims *against the NLRB*. To moot those claims, the Board only had to render an adverse order quickly against Amazon disposing of all the issues in the Bargaining Case. It is notable that the Board apparently declined requests to defer its proceedings. According to Amazon, "[i]mmediately after filing suit, [it] asked the Board to administratively stay the [Bargaining Case]," but "[t]he Board refused." Only after the district court on September 10 scheduled the motions hearing for September 24 did the Board on September 11 extend the initial show-cause deadline to September 27—thus setting the deadline after the district court's hearing on both Amazon's motion *and the NLRB's motion to transfer*. Amazon represented to the district court after the motions hearing that it "again requested" that the Board stay the Bargaining Case, but the "Board [was] unwilling to do so." Even the district court at the motions hearing asked the NLRB why it was not "just agreeing to stay a decision until all this is handled." The NLRB responded: "Because the agency obviously has an

---

[37] *Fort Worth*, 100 F.4th at 533.

interest in continuing its orderly processes." But that is exactly the point: the Board's continuing its orderly processes, which no doubt is a legitimate interest, could moot Amazon's district court claims. That potential outcome provided Amazon's legitimate basis for urgency in seeking preliminary relief.

## B

The moving party also must act diligently. While Amazon was arguably less diligent here than the moving party in *Fort Worth*, Amazon's efforts in this context were sufficient.

Amazon filed suit on September 5—just six days after the Board issued its second notice to show cause in the Bargaining Case—seeking declaratory and permanent injunctive relief. Although the Bargaining Case had begun a little more than a year prior, there was minimal action in the Bargaining Case while the related Election Case proceeded; in fact, Amazon had argued in response to the Board's first notice to show cause that the Board could not resolve issues in the Bargaining Case until it completed the Election Case. The Board denied review of the Election Case on August 29, 2024, and issued its second notice to show cause in the Bargaining Case on August 30. Amazon had little reason to challenge the effectively paused Bargaining Case until the Election Case ended, and Amazon promptly sued once it did.

Amazon's complaint also requested a TRO and a preliminary injunction against the Bargaining Case. The complaint did more than merely make clear "that the deadline to respond to the NLRB's summary-judgment motion was September 13."[38] Rather, Amazon emphasized that its "need for a temporary restraining order is imminent and dire because the NLRB may

---

[38] *Ante* at 8.

issue an order in [the Bargaining Case] any time on or after September 13, 2024." Amazon also requested that the court "set a hearing for a preliminary injunction, and, after a properly noticed hearing, issue a preliminary injunction."

On September 9, the court advised Amazon that a local rule required submitting an application for temporary or preliminary relief in a separate motion. Amazon filed its motion for a TRO and preliminary injunction on September 10. Amazon's motion reiterated the urgency it had raised in its complaint, emphasizing that "Amazon must file any supplemental opposition to the original Notice to Show Cause **_on or before Friday, September 13, 2024_**" (bold, italics, and underline in original).[39]

Both the September 5 complaint and September 10 motion made clear that Amazon's show-cause deadline was (initially) September 13, after which the Board would be poised to issue a ruling on the General Counsel's summary judgment motion, potentially mooting Amazon's district court claims. Amazon repeatedly emphasized the (postponed) September 27 show-cause deadline at the September 24 motions hearing, even stating at one point that it "want[ed] the TRO today."[40] At the end of the hearing, Amazon represented that "a TRO or preliminary injunction does need to be granted to, again, stop the NLRB from issuing an order in the" Bargaining Case "[b]ecause if it goes forward after this Friday and issues an order granting the summary judgment [motion], then the constitutional issues again are mooted."[41] Finally, Amazon's September 26 letter brief told the

---

[39] ROA.83.

[40] ROA.548.

[41] ROA.611-12.

district court that Amazon would consider its motion effectively denied on September 27.[42]

In my view, these facts show that Amazon "made clear from its first filing that . . . [it] had an unusually short window of time" before it needed injunctive relief, which it "repeated" multiple times.[43]  I accept that Amazon failed until September 26 to state expressly that it would consider its motion "effectively denied" when the show-cause deadline arrived on September 27.  But it was indisputably clear from the earlier filings that Amazon, if it were entitled to preliminary injunctive relief, needed a ruling before the show-cause deadline, after which the Board's action could leave Amazon's alleged injury "impossible to remedy."[44]  The NLRB argues that Amazon tried "to impose a decisional deadline with barely one day's notice."  Yet even the district court commented at the motions hearing that Amazon was "asking [it] to make a major decision on two weeks' notice."  Given this statement by the district court, I cannot agree with the majority opinion's conclusion that Amazon "failed to inform the district court of its need[]" for a ruling by the show-cause deadline until just one day before that deadline.[45]

Ironically, whatever doubt there might have been from Amazon's failure to repeat some apparently talismanic phrase earlier, *the NLRB's* September 10 transfer motion made clear that "Amazon can claim that its motion for injunctive relief has been 'effectively denied,' . . . [on] Friday, September 13,"[46] which was the then-operative show-cause deadline.  While

---

[42] ROA.508-09.

[43] *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 534 (5th Cir. 2024).

[44] *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

[45] *Ante* at 9.

[46] ROA.157.

No. 24-50761

the NLRB's brief in this court characterizes this concession as a suspicion "that Amazon might seek to manufacture an effective-denial argument," the concession at the very least makes clear that the parties and district court understood by September 10 that Amazon was seeking relief before the Board-imposed show-cause deadline.

The majority opinion faults Amazon for failing to object at the motions hearing when the district court set the supplemental briefing deadline at noon on September 27.[47]  I do not believe this means Amazon failed to act diligently.  Amazon had repeatedly made clear—including, by my count, five times earlier during that very hearing—that it needed relief by the show-cause deadline.[48]  Our decision in *Fort Worth* does not require that Amazon have repeated its need for relief *yet again*.

I do not mean to criticize the district court.  "District courts have wide discretion in managing their docket," and "plaintiffs cannot simply say they need an expedited ruling and then appeal by claiming effective denial when they don't get it on their preferred timeline."[49]  Amazon asked the court to consider complex constitutional issues on an accelerated timeline, which no doubt placed great pressure on the court.  Notably, unlike in *Fort Worth*—

---

[47] *Ante* at 8-9.

[48] ROA.548 ("[W]e do want the TRO today, Your Honor."), 558-59 ("[O]ur filing is due this Friday, the 27th. . . . [W]e believe that a ruling could issue as soon as we file a brief."), 586 ("The order could issue at any time after we file our motion for summary judgment."), 595 ("[I]f the Board issues a decision in the [Bargaining C]ase, the claims on our lawsuit are mooted.  That's the emergency.), 611-12 ("I think a TRO or preliminary injunction does need to be granted to, again, stop the NLRB from issuing an order in the underlying [Bargaining C]ase.  Because if it goes forward after this Friday and issues an order granting the summary judgment, then the constitutional issues again are mooted.").

[49] *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 535 (5th Cir. 2024).

where the district judge sua sponte directed his attention to another matter entirely—the judge here took some action on Amazon's motion by scheduling a hearing and eventually denying the TRO after Amazon appealed. We have declined jurisdiction where the district court has done far less because "mere inaction is not an order refusing injunctive relief, and is not appealable."[50] But at bottom, there was limited time in which preliminary relief could preserve the district court's ability to grant meaningful permanent relief, assuming Amazon was entitled to either. Given that legitimate basis for urgency, as well as Amazon's relative diligence pursuing its precise claims and the uncertainty as to what would transpire (and when) after the show-cause deadline, I believe the principles in *Fort Worth* support interlocutory appellate jurisdiction here.

\*     \*     \*

For these reasons, I would exercise interlocutory appellate jurisdiction to reach the merits of Amazon's appeal. Because the court instead dismisses the appeal for lack of jurisdiction, I respectfully dissent.

---

[50] *Overton v. City of Austin*, 748 F.2d 941, 951 (5th Cir. 1984).